268 Minn. 48 (1964)
127 N.W. (2d) 702
IN RE WELFARE OF DAVID ALLEN BARRON.
SYLVIA TURKEL
v.
RAMSEY COUNTY WELFARE BOARD.
No. 38,947.
Supreme Court of Minnesota.
April 17, 1964.
Paul H. Ray, for appellant.
William B. Randall, County Attorney, and Thomas M. Quayle, Assistant County Attorney, for respondent.
ROGOSHESKE, JUSTICE.
This is an appeal from an order terminating the parental rights of a mother of an illegitimate child born May 7, 1955. The ultimate *49 question presented is whether the evidence sustains the court's findings upon which the order was issued.
It appears that the procedure in some vital respects followed the governing statutes as they existed prior to their amendment in 1959 by the Juvenile Court Act.[1] Since this act was in effect when the petition was filed and was intended to modify the procedure to be followed,[2] it is necessary that we view the critical findings in the light of the procedural history.
The proceedings were instituted in July 1960 before the Juvenile Court Division of the Ramsey County District Court upon the verified petition of a county welfare representative, which alleged that the child's mother had 
"* * * made arrangements for placement of David in a manner detrimental to the welfare of the child in a home not licensed as required by law; that he is without proper parental care because of the emotional instability of his mother and the marital conflict existing between the mother and step-father * * *."
The petition advised the court that the Ramsey County Welfare Board requested the child "be committed to the guardianship of the Commissioner of Public Welfare to be placed for adoption if and when found to be suitable for adoption" and prayed for an inquiry into the alleged neglect of the child.[3] Upon notice, the petition was heard on August *50 4, 1960. The mother did not appear, claiming illness. The court, upon being advised by the welfare authorities that the child was in need of care and supervision, placed the child under the legal custody of the Ramsey County Welfare Department until October 13, 1960, with authority to place the child in a foster home.
On August 15, 1960, upon the mother's petition, a rehearing was summarily ordered. At the rehearing on September 14, 1960, the mother was represented by counsel and the testimony of numerous witnesses was submitted. The court made detailed findings that because of the emotional instability of the mother, her marital difficulty and probable moral depravity, and inadequate housing facilities, the child was dependent and neglected and in need of care. Upon these findings, it did not terminate the mother's parental rights or, as requested, order commitment to the commissioner of public welfare. Instead, as clearly authorized by Minn. St. 260.235,[4] the court granted temporary legal custody to the Ramsey County Welfare Department until September 14, 1961. The order provided that visitation rights for the *51 mother in the foster home be arranged and that if the mother did not cooperate with "visitation policies and plans" the court was to be immediately advised.
Following this order, the child was placed in a foster home. In April 1961, the mother petitioned for restoration of custody or in the alternative for placement of the child in a foster home where he could receive instruction in the Jewish religion. After a hearing, this petition was denied on June 5, 1961, upon a finding that the child continued to be in need of care "because of the faults and habits of the mother and her state of immaturity." The legal custody of the child remained unchanged but the welfare department was directed to continue its efforts to secure a Jewish home or facility and to make a progress report on September 14, 1961. Shortly before September 14, 1961, the mother filed an affidavit of prejudice against the judge who had heard the contested proceedings. Thereupon, an order was filed setting the matter for hearing on November 28, 1961, before a different judge. The order recited that the Ramsey County Welfare Department was requesting that the child be committed to the custody of the commissioner of public welfare and that the mother was opposing such commitment.[5] A de novo hearing was held and the court ordered the termination of the mother's parental rights upon the following findings:
"4. That the parent has substantially and continuously or repeatedly refused to give the child necessary parental care and protection.
"5. That although the parent is financially able, she has continuously neglected to provide him with subsistance and other care necessary for his physical and mental health and morals and has neglected to pay for such care since August 4, 1960, when legal custody was placed with the Ramsey County Welfare Department by order of this Court.
"6. That the mother is unfit by reason of her emotional immaturity and mental instability and other conduct found by the Court to be detrimental to the physical or mental health or morals of the child.
"7. That following upon a determination of dependency and neglect, *52 reasonable efforts under the direction of the Court have failed to correct the conditions leading to the determination."
1. A reading of the pertinent statutes[6] in the light of the interrelated provisions of the Juvenile Court Act indicates that a proceeding to terminate parental rights is distinct from other proceedings affecting the parent-child relationship. As the comments of the interim commission which drafted the act suggest, it was intended to modify the previous statutes so that a proceeding to adjudge dependency and neglect would be separate and distinct from a proceeding to terminate parental rights.[7] This is also made clear by comparing the definitions of a dependent and a neglected child[8] with the grounds upon which the court is given authority to terminate parental rights.[9] The separate nature of termination proceedings is also recognized by § 260.235, which empowers the court to protect the welfare of the child even though the *53 petition to terminate is denied.[10] Thus, it appears that a proceeding to terminate rights is intended for those situations where it reasonably appears that a condition of dependency or neglect will continue for a prolonged, indeterminate period. Implicit in the statutes is the policy that whenever possible the family relationship should be strengthened and preserved. It is contemplated that the usual cases of dependency and neglect would not justify instituting termination proceedings but should be dealt with by separate proceedings. An involuntary termination of the relationship in cases of dependency and neglect should be ordered only where the other statutory remedies have failed.
It does appear possible that, following an adjudication of dependency or neglect, a termination of rights may be ordered upon grounds other than a failure to correct the conditions leading to the prior adjudication of dependency or neglect as specified in § 260.221(b)(5). However, if the evidence relied upon was identical to that upon which dependency or neglect was found, and did not relate to the period following such an adjudication, its sufficiency to support a termination would be most unlikely.
In view of the separate nature of the proceedings, the statute contemplates that a new petition should be filed when a termination of rights is sought following a prior adjudication of dependency or neglect. Moreover, when the hearing on a petition to terminate results in a finding of dependency or neglect, a new petition should likewise be filed if the request to terminate is later renewed. This procedure is necessary not only to enable the court to ascertain whether the petition sets forth "the facts which bring the child within the jurisdiction of the court" but to give proper notice of the allegations.
2. The burden to prove the allegations upon which a complete severance of the parent-child relationship is sought is upon the petitioner.[11] In our opinion it should remain there even though there has *54 been a previous finding of dependency and neglect. When dependency or neglect has been found, the policy of the statute requires, and the welfare of the child demands, that the social agencies make a reasonable effort to aid the parent to understand and meet his responsibilities to the child. Where, as here, such services are made available and the neglect continues, essential facts concerning what was done are peculiarly within the possession of the welfare agencies.[12] The duty to disclose these facts at a termination hearing justifies the conclusion that the burden of proof should remain upon the petitioner.
3. In the case before us, a new petition was not filed and, as noted above, the petition filed did not allege facts or grounds in terms contemplated by § 260.221. Following the hearing on September 14, 1960, the court, apparently with the acquiescence of the welfare department, refused to terminate the mother's parental rights although the evidence submitted by the petitioner was substantially the same as the record before us and at that time would have supported such an order. However, the order before us is based upon findings which are much broader than those supporting the prior adjudication of dependency and neglect and cover the period following the mother's loss of custody. Petitioner presented no evidence regarding the mother's habits, her cooperation with the welfare agency, or her conduct toward the child during the period after her loss of custody. Only the mother submitted evidence regarding this period. In all significant respects, her testimony is undisputed. Although her prior neglect was substantial and her past conduct unquestionably detrimental to the child's welfare, it was not suggested by petitioner that her claimed rehabilitation is only temporary and unreliable. Even if we assume that evidence exists which could establish such to be the case, upon this record such assumption is pure speculation. The mother's testimony established that following her unsuccessful *55 efforts to regain custody in 1961 she became gainfully employed; that her earnings are being supplemented by regular allotment payments from her husband who is now in military service; that she has obtained adequate housing facilities for herself and the child; and that she has regularly visited the child and faithfully attended to his religious training. Giving due consideration to her previous faults as well as to her testimony, in our view the evidence is not sufficient to support findings which declare a continuing neglect of the child as expressed by the court in findings 4, 5, and 6 quoted above. Clearly, there is no evidentiary support for finding 7. Rather, it is difficult to escape the conclusion that the mother has, to a commendable degree, corrected the conditions leading to the child's neglect. Perhaps the failure to regard the proceedings as separate from the prior proceedings may explain the lack of any attempt by the welfare board to inform the court of its view of the mother's effort to correct the conditions leading to her neglect of the child. Because the evidence is insufficient to support the findings, it was error to terminate her parental rights.
The order is reversed and the case remanded for such proceeding as may be necessary and authorized for the protection of the child.
NOTES
[1] See Minn. St. 1957, §§ 260.11 and 260.12, relating to a "final commitment to the commissioner of public welfare" and the effect thereof, repealed by L. 1959, c. 685.
[2] See, Minn. St. 260.221 (grounds for termination of parental rights), 260.231 (procedure for termination of rights), and 260.235 (disposition where rights are not terminated), effective July 1, 1959.
[3] Except for the allegation that the child is "without proper parental care," the facts alleged fall short of stating facts which authorize termination. Minn. St. 260.221 provides: "The juvenile court may, upon petition, terminate all rights of parents to a child in the following cases:

"(a) With the written consent of parents who for good cause desire to terminate their parental rights; or
"(b) If it finds that one or more of the following conditions exist:
"(1) That the parents have abandoned the child; or
"(2) That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection; or
"(3) That, although the parents are financially able, they have substantially and continuously neglected to provide the child with necessary subsistence, education, or other care necessary for his physical or mental health or morals or have neglected to pay for such subsistence, education or other care when legal custody is lodged with others; or
"(4) That the parents are unfit by reason of debauchery, intoxication or habitual use of narcotic drugs, or repeated lewd and lascivious behavior, or other conduct found by the court to be likely to be detrimental to the physical or mental health or morals of the child; or
"(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination."
Section 260.231 requires, by reference to § 260.131, that the petition shall plainly set forth "[t]he facts which bring the child within the jurisdiction of the court."
[4] Section 260.235 provides: "If, after a hearing, the court does not terminate parental rights but determines that conditions of neglect or dependency exist, the court may find the child neglected or dependent and may enter an order in accordance with the provisions of section 260.191."
[5] This recital, as the mother concedes, was intended to make clear that the hearing scheduled could result in terminating all her rights to the child.
[6] See footnotes 3 and 4, supra.
[7] See Report of Interim Commission on Public Welfare Laws 1959, comment on § 260.015, subd. 8, p. 13; comment on § 260.191, subd. 1, p. 59, which states in regard to a transfer of legal custody upon a finding of dependency or neglect, "The proposal differs from the existing law in that the transfer of legal custody [in dependency and neglect proceedings] does not terminate parental rights, which will be a separate proceeding"; and comment on § 260.221, p. 64, which states, "In essence the provisions of this section are intended to state the grounds for which the court may terminate a parent's rights to a child. This proceeding may be brought initially, without a previous finding of dependency or neglect, on grounds described in clause (a) or clause (b), items 1 through 4. The proceeding may also be brought after a finding of neglect or dependency under clause (b), item 5. * * *

"* * * With the exception of clause (a) and clause (b), items 1 and 5, the provisions of * * * [this] section * * * state situations of neglect in a stronger manner than stated in the definition of neglect. The stronger statement is necessary to prevent abuse of the procedure of terminating parental rights without a prior neglect adjudication. Item 5 of clause (b) * * * is recommended to take care of those situations where efforts to correct the neglect or dependency under court direction have failed."
[8] § 260.015, subds. 6 and 10.
[9] § 260.221, quoted in footnote 3, supra.
[10] § 260.235, quoted in footnote 4, supra.
[11] In all proceedings involving custody we have consistently held that a parent is presumed to be fit and suitable for custody and that the burden of proof is on the person who alleges unfitness. State ex rel. Lehman v. Martin, 95 Minn. 121, 103 N.W. 888; State ex rel. Platzer v. Beardsley, 149 Minn. 435, 183 N.W. 956; In re Baby Girl Larson, 252 Minn. 490, 91 N.W. (2d) 448; In re Dependency of Klugman, 256 Minn. 113, 97 N.W. (2d) 425.
[12] The record indicates that the mother, at the request of the welfare agency, submitted to a medical examination directed at determining the cause of her emotional instability but the results thereof were not submitted at the hearing.