## No. 25943

In the Matter of the People In the Interest of M.M., Upon the Petition of Ruth Mangan, Caseworker, Department of Welfare, Boulder County, and Concerning the Rights of W.M. and I.M.

(520 P.2d 128)

Decided March 18, 1974.                    Rehearing denied April 8, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Aurel M. Kelly, Assistant, Donna A. Maranchik, Assistant, for The People in the Interest of M.M., Dependent.

Charles B. Howe, for petitioner-appellee.

Dennis L. Blewitt, Michael P. Dominick, for respondent-appellants.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an appeal from a judgment of the District Court for Boulder County which adjudicated M.M. to be a dependent child and terminated all parental rights in the child. We reverse and remand for further findings consistent with the views hereinafter set forth.

On June 28, 1971, Ruth Mangan, a child welfare worker employed by the Boulder County Department of Public Welfare, filed a petition in dependency alleging that M.M. did not have proper parental care and that his home was an unfit place for such child. The petition asked that M.M. be declared a dependent child, 1967 Perm. Supp., C.R.S. 1963, 22-1-3(19), and that all parental rights in M.M. be forever terminated, 1967 Perm. Supp., C.R.S. 1963, 22-3-11(2)(a).

A combined adjudicatory-dispositional hearing was held on August 18, 1971, as the result of which the court found the child to be neglected and dependent and terminated parental rights. The following is a summary of the evidence presented at that hearing.

Jeane Goodwin, a public health nurse for the Boulder County Health Department, testified that she visited M.M.'s home on June 25, 1971, in response to an anonymous telephone referral. She testified that after observing the child

she was convinced that the child would die if he did not receive immediate medical attention, and she persuaded the mother to take the child to a Dr. Kamprath. The child was taken to a hospital where after some discussion the mother refused to sign an admission form until she had consulted with her husband who was out of town on a business trip. The welfare department then obtained a court order giving temporary custody to the welfare department and authorizing hospital care for the child. Upon his return, the father of M.M. went to the hospital and signed the admission form.

The testimony relating to the child's condition at the time of admission is uncontroverted. M.M. appeared to be malnourished, his abdomen was distended, his skin was floppy or loose, and his color and skin texture was poor. He was running a slight fever. Medical testimony established that M.M. was, in fact, suffering from malutrition, and that he also had sustained a linear skull fracture. It was further established that M.M. was developmentally retarded as a result of the malnutrition, and had had no weight gain of any magnitude during the first six months of his life.

M.M.'s parents were practicing vegetarians as was required by their Buddhist religion. They have two other young children who are healthy normal children who have been raised on the same vegetarian diet as M.M. The skull fracture apparently occurred when M.M. kicked himself out of his mother's arms and fell on his forehead about five weeks before the welfare department intervened. Both parents were very concerned with the child's condition at that time, but the child appeared to suffer no adverse effects from the injury so they did nothing. The parents attributed the child's failure to gain weight to the summer heat, and were not unduly alarmed because of an alleged similar experience with their daughter. Both parents indicated a willingness to consent to continued medical supervision of M.M. if the court should so order.

On this evidence the court, although noting that the parental neglect was not intentional, determined that all parental rights in M.M. should be terminated.

There is no question that M.M. was a "neglected or

dependent child." 1967 Perm. Supp., C.R.S. 1963, 22-1-3(19).[1] The appellee contends that the evidence which was sufficient to support a finding of neglect and dependency required termination of parental rights in order to serve the best interests of the child. We agree that this may be true, but it does not follow that the court must terminate parental rights because the evidence is sufficient to support a finding of neglect and dependency.

The termination of parental rights is a drastic remedy. The state directs many laws to the preservation of the family and the protection of the home. The Children's Code recognizes this when, in the Declaration of Purpose, it states: "1(a) The general assembly hereby declares that the purposes of this chapter are:

(b) To secure for each child, subject to these provisions, such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;

(c) To preserve and strengthen family ties whenever possible, including improvement of the home environment;

(d) To remove a child from the custody of his parents only when his welfare and safety or protection of the public would otherwise be endangered.

. . . ."

1967 Perm. Supp., C.R.S. 1963, 22-1-2.

The above stated statutory preference for preserving family ties and the home environment is undoubtedly a result of the central role of the family in American life.

From the foregoing it is clear that the public policy of the state is to provide for a neglected and dependent child in a manner that will best serve his welfare and the interests of society. That, of course, is basic. However, his care and guidance should be *preferably in his own home,* so as *to preserve and strengthen family ties,* and the *court should not remove him from the custody of his parents except when his welfare and safety or the protection of the public would be endangered.*

---

[1] 1969 Perm. Supp., C.R.S. 1963, 22-3-6 provides that the allegations in a petition in a case concerning neglected or dependent children shall be shown by a preponderance of the evidence.

■ Other state courts have recognized that termination of parental rights is a drastic remedy in which a most serious interest of the parents is jeopardized. *State v. McMaster,* 259 Ore. 291, 486 P.2d 567 (1971); *In Re Sego,* 82 Wash.2d 736, 513 P.2d 831 (1972); *Fritts v. Krugh,* 354 Mich. 97, 92 N.W.2d 604 (1958). *See also In Re Barron,* 268 Minn. 48, 127 N.W.2d 702 (1964); *Daugaard v. People,* 176 Colo. 38, 488 P.2d 1101 (1971). However, the primary and controlling issue, even where parental rights are at stake, is the determination of what will best serve the interests and welfare of the child. *Johnson v. People,* 170 Colo. 137, 459 P.2d 579 (1969); *Averch v. Averch,* 104 Colo. 365, 90 P.2d 962 (1939).

The Colorado Court of Appeals in *People In Interest of K.S. and M.S.,* 33 Colo. App. 72, 515 P.2d 130 (1973), pointed out that the Children's Code provides alternative methods of disposition for children adjudicated neglected and dependent, mentioning

". . . temporary custodial supervision by the state, including possible denial of custody to the parents until rehabilitation has occurred or until the child has reached such an age as to be no longer subject to the Code; or termination of parental rights, which means the permanent and complete dissolution of any legal parent-child relationship."

The court then observed that the Children's Code establishes no standards and provides no guidance to the courts in choosing between the several alternatives and also, that there was little guidance to be found in reported cases. After explaining the legal implications which result from termination of parental rights as distinguished from temporary custodial supervision by the state, the court stated:

"We believe that the legislation was enacted with an understanding and appreciation of the societal interest in maintaining and protecting the natural parents' interests in the child, and those of the child in the parents, absent parental acts or omissions sufficiently harmful to the child to mandate a forfeiture of those rights. It is our view that parental rights are personal between each parent and child and that termination following a determination of depend-

ency and neglect should result only where there is a history of severe and continuous neglect by a particular parent whose rights are sought to be terminated, a substantial probability of future deprivation, and a determination that under no reasonable circumstances can the welfare of the child be served by a continuation of the legal relationship of the child with the parent.''

We must test the court's findings by the foregoing statutory and judicial standards. We note that the court found generally ''that the allegations set forth in the petition be sustained.'' The allegations in the petition were that the child had not received proper parental care and that its home was an unfit place for the child ''by reason of neglect, immorality or depravity on the part of its parents.''

The only reference in the complaint to termination of parental rights was in the prayer. The formal findings of fact and judgment were therefore, obviously deficient when tested by *People In the Interest of K.S. and M.S., supra.*

In addition to the formal findings, the court made findings from the bench at the conclusion of the hearing. A review of these findings likewise shows that they were not sufficient to support the judgment.

It is true that the court found that the child '' 'failed to thrive' because the parents, by their neglect, — perhaps not by their intentional neglect, but by something, some relationship between the parents and the child in this case just resulted in the child not having the proper care; Not seeking medical advice, even though it was within their religious precepts to do so; Letting the child deteriorate until almost death occurred. And perhaps this was, — I am sure it was not done in a knowing way. We just don't know about this sort of thing, but we do know that it happens and the only way we can protect the child, and, perhaps, to protect the parents, is to remove the child from the home.''

To determine that the best interests and welfare of a dependent or neglected child would be served by a termination of parental rights, the trial court must find that the condition which resulted in the determination that the child

is dependent and neglected will in all probability continue into the future. Further, the court must find that under no reasonable circumstances can the welfare of the child be served by a continuation of the parent-child relationship. This second test requires the court to explore and specifically eliminate alternative remedies. *See People In Interest of K.S. and M.S., supra; Johnson v. People, supra.*

The court having failed to make the required findings for the termination of parental rights, the cause is remanded to the trial court for that purpose. The court may, if it deems it advisable, hold a further hearing in the light of intervening events, or make findings on the basis of the record before it, and enter a judgment on its new findings.

In order to eliminate the necessity for a second appeal and its attendant delays, this court retains jurisdiction, subject to the remand, and the court may, if either party requests it, recertify the record to this court for final disposition.

MR. CHIEF JUSTICE PRINGLE does not participate.