## No. 25943

**In the Matter of the People In the Interest of M.M., Upon the Petition of Ruth Mangan, Caseworker, Department of Welfare, Boulder County, and Concerning the Rights of W.M. and I.M.**

(533 P.2d 913)

Decided April 7, 1975.

200

Charles B. Howe, for petitioner-appellee.

Michael P. Dominick, for respondents-appellants.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is the sequel to our initial decision in this matter announced March 18, 1974. 184 Colo. 298, 520 P.2d 128. For a full exposition of the facts we refer to the initial opinion, alluding

here to only those which are relevant to the resolution of the current appeal.

The trial court after its original hearing determined that the minor child was neglected and dependent and terminated the parental rights of both parents. We agreed with the trial court that the evidence before it supported its conclusion as to neglect and dependency, but held that a finding of neglect and dependency alone was not sufficient to support the termination of parental rights. We advised the trial court:

"To determine that the best interests and welfare of a dependent or neglected child would be served by a termination of parental rights, the trial court must find that the condition which resulted in the determination that the child is dependent and neglected will in all probability continue into the future. Further, the court must find that under no reasonable circumstances can the welfare of the child be served by a continuation of the parent-child relationship. This second test requires the court to explore and specifically eliminate alternative remedies."

In remanding the matter we said that the trial court could, if it deemed it advisable, hold a further hearing in the light of intervening events, or make findings on the basis of the record before it and enter judgment on its new findings.

Although three years elapsed between the initial hearing and the hearing on remand, the court elected not to hear further evidence. On reconsideration of the original record it made conclusory findings consonant with the requirements for the termination of parental rights. The parents challenge the sufficiency of the evidence to support the court's new findings. The record, particularly in the light of intervening events, leads us to the conclusion that the judgment of the court as to termination of parental rights is not supported by the evidence and we must reverse.

When we gave the court the option of reconsidering its original judgment on the existing record or holding a new evidentiary hearing, we did not contemplate, in view of what we held to be the law in reference to the termination of parental rights, that the same result would obtain merely by a *pro forma* compliance with the mandate.

■ We attempted in our opinion to expound the applicable public policy as expressed by the General Assembly in the Children's Code, 1967 Perm. Supp., C.R.S. 1963, 22-1-2,[1] concluding:

"From the foregoing it is clear that the public policy of the state is to provide for a neglected child in a manner that will best serve his welfare and the interests of society. That, of course, is basic. However, his care and guidance should be preferably in his own home, so as *to preserve and strengthen family ties,* and the *court should not remove him from the custody of his parents except when his welfare and safety or the protection of the public would be endangered.*" (Emphasis in original.)

■ In our first opinion we agreed with the trial court that the evidence was sufficient to support its finding that M.M. was a "neglected or dependent" child. We agreed that although such evidence may require termination of parental rights in order to serve the best interests of the child, "it does not [necessarily] follow that the court must terminate parental rights because the evidence is sufficient to support a finding of neglect or dependency." We then noted, "the termination of parental rights is a drastic remedy."

In their "motion for a new hearing or, in the alternative, motion for modification of order," the parents advised the court:

"In the time since the original hearing in August 1971, and the Amended Findings of the trial court in June 1974, almost three years have passed. In that time span, two events of extreme importance to this decision have occurred. The first is that the M___s have had another child. This child, a boy, is now approximately ten months old. The M___s have been taking the child to the well-baby clinic of the Welfare Department on a regular basis, and this has been totally voluntary. Because of the M___s' previous trouble, which led to this case, the welfare department has been taking an active interest in the progress of the new child, and all who have had contact with him acknowledge that he is in extremely good health. The presence of this new child has a direct bearing on the contention of the Petitioner and the Amended Findings of Fact made by the court that the M___s are

[1]Now 19-1-102, C.R.S. 1973.

not fit parents to raise their own child. Moreover, since the M⎯s have been taking this child to the well-baby clinic on a voluntary basis, the Amended Finding of Fact #6(a), (b), and (c) that the M⎯s have not changed their attitudes toward the medical profession and that they would not in the future seek medical care for the child is not borne out by the actual events.

"The other event which was not considered by the court which occurred after the August 1971 hearing was the grave illness of their daughter Sonja. This illness occurred suddenly and dramatically, and, far from not seeking medical aid, the M⎯s took her immediately to the hospital for treatment."

If a hearing bears out these representations as to the change of attitude of these parents toward doctors and hospitals, it is most difficult to perceive how the court could find, as it did in its amended order of June 3, 1974:

"That the conditions which resulted in the determination that the child is dependent and neglected will in all probability continue into the future in that:

a. The evidence shows that Respondents are adverse to seeking out the advice and services of professional medical personnel in caring for the child;

b. . . . .

c. That Respondents' testimony to the effect that they would, in the future, seek medical care for the child was not credible and that testimony indicating the possibilities of satisfactory alternatives in the methods of care are inconsistent, inconclusive, inadequate and not credible."

Because the trial court made an initial finding of neglect, it does not necessarily follow that the attitude and conduct which was responsible for that neglect will continue into the indefinite future.

█ The unwillingness of the parents to seek medical care for the child should not be presumed from the facts developed in the original hearing in the face of the representations of the parents. These representations showed the parents' confidence in the doctor's competence and a willingness to permit his treatment of another child, younger than M.M., and indicated that the younger child was healthy and robust and that the parents had taken the child to the well-baby clinic of the Health Department

on a regular basis. A court cannot in good conscience ignore possible evidence of this sort when the matter at stake is of such gravity as the termination of parental rights. *See* 1967 Perm. Supp., C.R.S. 1963, 22-3-9(1) (section 19-3-109, C.R.S. 1973); *Johnson v. People,* 170 Colo. 137, 459 P.2d 579 (1969).

The trial court also made a general finding — "that under no reasonable circumstances can the welfare of said child be served by a continuation of the parent-child relationship" — and then set forth conclusory findings which negated each of the statutory alternatives which this court directed the trial court to explore. We will not comment on all of them, but will briefly discuss one only to indicate the apparent lack of consideration which the court gave to the problem.

The court found:

"That in the interests of providing continuity in the care of the child who has been removed from Respondents' home since June, 1971, Respondents' parental rights should be terminated."

The record shows facts which strongly suggest the court erred in the finding on which its conclusion was based. On June 28, 1971, the child was placed in the temporary custody of the Boulder County Department of Public Welfare. On August 18, 1971, following the only hearing held by the court, it entered its decree which in material part reads:

"M___ M___ is declared dependent and is therefore adjudged to be a ward of the court; that the parental rights and obligations of W.M. and I.M. are terminated and that said child is hereby placed in the permanent custody of the Boulder County Department of Public Welfare pending placement for adoption."

The child has remained in the custody of the Welfare Department to this time. Whether the child is returned to its parents or adopted by strangers, there will be a break in the continuity of the care of the child.

■ The representations of the parents negate virtually every adverse finding made by the trial court which formed the basis for its judgment terminating parental rights. Therefore, the court, in view of the public policy of this state, must give the parents an opportunity to establish that their representations are factual.

The judgment of the trial court terminating parental rights is reversed and the cause remanded for further proceedings not

inconsistent with the views expressed herein.

In order to eliminate the necessity for another appeal and its attendant delays, this court retains jurisdiction, subject to the remand, and the trial court shall, if either party requests it, recertify the record to this court for final disposition.

MR. JUSTICE ERICKSON concurs in the result only.