535 P.2d 192 (1975)
The PEOPLE of the State of Colorado,
In the Interest of M. B. and M. B., Petitioner-Appellee,
and concerning J. B. and E. B., Respondents-Appellants.
No. 26370.
Supreme Court of Colorado, En Banc.
May 12, 1975.
*193 S. Morris Lubow, County Atty., Kent C. Schroeder, Deputy County Atty., Commerce City, for petitioner-appellee.
Susan Wendall, Whicher, Wheat Ridge, for respondents-appellants.
KELLEY, Justice.
This is an appeal from judgments of adjudication and disposition of the District Court in and for Adams County which held M.B. (boy) and M.B. (girl) to be dependent and neglected children and terminated all parental rights in the children. For the reasons hereinafter set forth, we reverse.
In June, 1971, J.B. and E.B., husband and wife, referred to herein as the respondents or the parents, requested that their five children be placed in the custody of the Adams County Department of Social Services (Department). Myrna Criswell of the Department investigated the matter and filed a petition in dependency on June 29, 1971, naming all five children.
On August 3, 1971, a hearing was held on the petition in Adams County District Court. The mother, E.B., appeared without counsel and informed the court that the father, J.B., was hospitalized and unable to be present at the hearing. On the basis of the mother's statement, that she felt it was in the best interests of the children that they be temporarily placed in the custody of the Department, the court sustained the petition and declared all of the children to be dependent and neglected, and informed E.B., the mother, that "she and her husband may request a further hearing to consider return of custody at any time they believe they can provide adequate care for the children, or any of them." The court placed the children in the custody of the Department and scheduled a review for six months hence.
On November 16, 1971, a hearing was held before a referee of the court to consider respondents' application for the return of custody of the children. The referee, however, recommended that the children remain in the custody of the Department and that the petition in dependency be amended to provide for the termination of parental rights. As in the original petition, the amended petition alleged:
"5.) That the facts which bring said child(ren) within the Court's jurisdiction are
"The environment is injurious to their welfare in that parents cannot maintain house and furniture payments required for children's needs; that father has medical and emotional problem which interferes with his ability to provide income and/or direct supervision and care for said children; that both parents have stated to workers that they cannot control said children and have requested *194 placement for the children; that the perents have failed or refused to provide proper or necessary subsistence, education, medical care or other necessary care." [Foregoing in original petition, too.]
In addition, the amended petition alleged:
"d. The children have been in foster care since June 29, 1971; the natural parents have made limited effort to secure a return of custody but have contributed nothing financially toward the children's support during this period.
"e. The respondents are unfit to resume the children's care, now or in the foreseeable future for the following reasons:
i. There is evidence of battering syndrome.
ii. The children suffer from physical and emotional deprivation causing stunted growth."
The amended petition was filed January 31, 1972, and an adjudicatory trial on the amended petition was set for February 3, 1972. Prior to trial, the court granted respondents' motion that the trial on the amended petition be had to a jury.
After numerous continuances, a combined adjudicatory and dispositional hearing was held on December 6, 1972. At the outset of the proceeding, counsel for the children requested a clarification of whether the matter was to be tried to a jury. The respondents, appearing pro se, were questioned in this respect by the court and indicated a willingness that the matter be tried to the court rather than a jury as they had previously requested. At the conclusion of the hearing, the court found all five children to be dependent and neglected. Nevertheless, custody of the three older children was returned to the parents and parental rights were terminated only as to M.B., by now a 7-year old boy, and M.B., now a 4-year old girl. The oldest child, a girl, appears to be emancipated. Thus, the three older children are no longer subjects of the action.
The respondents filed a motion for a new trial which was granted by the court for the reason that the respondents had not been represented by counsel at the December 6, 1972 hearing. Section 19-1-106, C.R.S.1973. A new adjudicatory hearing relating solely to the two youngest children, M.B. (boy) and M.B. (girl), was then set for August 30, 1973. At this hearing the respondents were represented by counsel (Evans) and the children were represented by a guardian ad litem (Sheppard). At the conclusion of the hearing the court found:
"That the children, M.B. (boy) and M.B. (girl) are dependent and neglected; that this is predicated on all the things that have been testified to here but, one, was the health of the children which was poor; two, was the manner in which they were fed; three, was the manner in which they were clothed; four, was the lack of security provided by the parents for the children; five was a lack of emotional stability; six, was the complete failure in discipline. It was not fair, it was not firm, was not consistent, and it was not reasonable. Additionally, seven, the court found that the parents were immature; number eight, that they had problems which they were just not then capable of coping with."
At the dispositional hearing on October 17, 1973, the court entered an order terminating the parental rights of both parents in the two children. The guardian was not present, nor was his absence explained.

I.
It is to be remembered that the public policy of this state is to provide for a neglected and dependent child in the manner that will best serve his welfare and the interests of society.
"However [the child's] care and guidance should be preferably in his own home, so as to preserve and strengthen family ties, and the court should not remove him from the custody of his parents except *195 when his welfare and safety or the protection of the public would be endangered." In re People in the Interest of M.M., Colo., 520 P.2d 128 (1974).
The Children's Code provides for either a combined or bifurcated adjudicatory-dispositional procedure. Section 19-3-106, C.R.S.1973 and section 19-3-109, C.R.S.1973; Johnson v. People in Interest of W.J., 170 Colo. 137, 459 P.2d 579 (1969). At the adjudicatory hearing the trier of fact is required to determine whether the allegations of the petitioner are supported by a preponderance of the evidence. Section 19-3-106(1), C.R.S.1973. If such a finding is made, it is then incumbent upon the court to hold a dispositional hearing. Section 19-3-106(6)(b), C.R.S.1973. Although section 19-3-111, C.R.S.1973 provides alternative methods of disposition, the Children's Code, as a whole, does not establish standards and guidelines to assist the courts in choosing between alternatives. People in the Interest of K.S., Colo.App., 515 P.2d 130 (1973).

II.
As an initial matter, the respondents allege a denial of due process resulting from the trial court's refusal to hear the testimony of one witness at the adjudicatory hearing of August 30, 1973. It is not seriously contested that the two children were dependent and neglected at the time the respondents surrendered the children to the Department. It was, in fact, the recognition by the parents of their inability, because of ill health and overwhelming financial difficulties, to provide adequate care and a proper home environment which caused them to surrender the children to the Department.
However, since the initiation of the proceedings, looking toward the termination of parental rights, there appears to have been a substantial and radical change in both the physical and financial health of the parents. Mr. Ronane of the Denver Department of Social Services had been working with the family from the time the two older boys rejoined the parents until the time of the hearing. The respondents proffered his testimony for purposes of shedding light on the current home environment and the attitude of the parents. The trial court's refusal to accept this testimony must be considered in light of the allegations of the amended petition hereinbefore set forth. Ronane's testimony was relevant and material to the issues before the court and it was reversible error for the court to keep it out.

III.
The respondents challenge the sufficiency of the evidence to establish the allegations in the amended petition that (1) "there is evidence of battering syndrome" and (2) "the children suffer from physical and emotional deprivation causing stunted growth." A review of the record shows that they are not sustained by a preponderance of the evidence as a matter of law. In fact, the court made no findings on these two issues. Since these are the basic reasons relied upon for terminating parental rights, the court had to find that, as of the time of the hearing, they had been proven by a preponderance of the evidence.

IV.
In re People in the Interest of M.M., Colo., 520 P.2d 128 (1974), was decided after the dispositional judgment in this case. Hence, the court did not have the benefit of the construction of the Children's Code as expounded in that decision. In that case we held that in order to terminate parental rights, the trial court must find that the condition which results in the determination that the child is dependent and neglected will in all probability continue into the future and the court must further find that under no reasonable circumstances can the welfare of the child be served by a continuation of the parent-child relationship.
The amended petition alleged that the respondents were unfit to resume the children's care "now or in the foreseeable future." *196 However, it appears that the court relied on evidence relating to the past, rather than the present or "the foreseeable future." On remand the court at the dispositional hearing must make complete such findings to support his determinations.

V.
Section 19-1-106, C.R.S.1973, provides that at his first appearance in court the child and his parents shall be fully advised by the court of their constitutional and legal rights, the right to counsel, and the right to a jury trial in the adjudicatory hearing concerning any child who is neglected or dependent.
The respondents had counsel at the two hearings under consideration here and in view of the remand for a new adjudicatory hearing, any error resulting from the early hearings at which either one or both parents were not represented is harmless error.
The court deemed it advisable to appoint an attorney as guardian ad litem and appointed William Sheppard on November 21, 1972. Section 19-3-105, C.R.S.1973. He represented the children at the August 30, 1973 adjudicatory hearing but was not present at the dispositional hearing on October 17, 1973. Where the object of the amended petition was to terminate parental rights, it was plain error to proceed to the dispositional hearing in the absence of counsel for the children.
The statement of the guardian ad litem at the conclusion of the adjudicatory hearing when the court refused to permit Mr. Ronane to testify shows the concern of counsel, the justification for his appointment and the desirability of his continued representation at the dispositional hearing:
"If the Court please, I'm in my own mind, having a hard time separating the events as they have happened over the years because this has taken place over a number of years. As the guardian ad litem for the children, there is no question in my mind that the testimony that was presented by the People here today would have made a prima facie case if we were talking about two years ago. I think the Court indicated there was testimony that was presented by Mr. Evans that there has been a dramatic change in the lives of these parents. I am not prepared to advocate at this point that we turn the children back to the parents without knowing more about what the situation is but I agree with Miss Reimer that the place for these children is with their parents, if their parents can handle them. In my own mind I would have liked to have heard the testimony of Mr. Ronane."

VI.
We note in the record a letter from the Department over the signatures of Mrs. Bonnie Smersh, Caseworker I, and Miss Merrily Reimer, Caseworker Supervisor II, addressed to the trial judge. This letter was dated October 16, 1973, the date of the dispositional hearing. The letter, which appears to be in the nature of a social study as provided for by section 19-1-108, C.R.S.1973, recommends termination of parental rights and gives the reason for the recommendation. The letter bears no filing stamp, nor does the record disclose that it was offered as an exhibit during the hearing.
Although it appears that the court considered the contents of this letter, the respondents were not apprised of its existence. Hence, the respondents were not provided with an opportunity to request the cross-examination of the persons responsible for the study. C.R.J.P. 19(b). Furthermore, the social study was considered at the dispositional hearing despite the fact that investigation for the study was commenced prior to the adjudication in violation of C.R.J.P. 20(d).

VII.
The respondents have raised various constitutional issues which we need not consider in light of the present disposition of the case.

*197 VIII.
The question of the right of the respondents to a jury trial was raised at different stages of the proceedings. As noted previously, section 19-1-106 gives the child and his parents the right to a jury trial in adjudicatory hearings. Section 19-1-106(4)(a)(I). The August 30, 1973 adjudicatory hearing proceeded without mention of the prior demand for a jury. Because of the remand for a new adjudicatory hearing, it is not necessary to consider the question of waiver, nor the constitutional implications raised by the respondents.
The respondents, having made a prior demand, will be entitled to a jury trial at the adjudicatory hearing. The granting of a new trial places the parties in the positions they occupied prior to the vacated hearing. C.R.C.P. 59(g); Gonzales v. Trujillo, 133 Colo. 64, 291 P.2d 1063 (1956).
The judgments are reversed and the cause is remanded to the trial court for further proceedings not inconsistent with the views herein expressed.