656 P.2d 1294 (1983)
The PEOPLE of the State of Colorado, Plaintiff-Appellee, In the Interest of M.S.H., a Child, And Concerning, E.H., Father, and S.H., Mother, Respondents-Appellants.
No. 81SA41.
Supreme Court of Colorado, En Banc.
January 10, 1983.
*1295 J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., J. Stephen Phillips, Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Hamilton, Shand & McLachlan, P.C., Michael E. McLachlan, Durango, court-appointed guardian ad litem.
I.H. Kaiser, Denver, for respondents-appellants.
LOHR, Justice.
This is an appeal by E.H. and S.H. (parents) from a judgment of the La Plata County District Court terminating their legal relationship with their child, M.S.H. The parents contend that the evidence was insufficient to support the judgment, the trial court erred in an evidentiary ruling and in the way it handled the burden of proof question, and the Colorado statute authorizing termination of parental rights does not comport with due process of law. Finding no merit in the parents' arguments, we affirm the judgment.
M.S.H., a girl, was born in the early fall of 1978. Her mother is S.H. and her father is E.H. Approximately two weeks after birth, S.H. took the child to Dr. Robert McGrath, who had delivered the baby, complaining that the child was not moving her left leg normally and that she had injured her leg by bumping into a piece of furniture. The doctor suspected child abuse and the baby was temporarily removed from the parental home. There followed a series of attempts to place the child back in her parents' home. After each such placement, unexplained injuries occurred to M.S.H., and La Plata County authorities again separated the child from her parents.
As a result of the history of injuries to M.S.H. while in the family home, dependency and neglect proceedings were instituted in La Plata County District Court. At the trial, in September of 1979, one of the principal incidents upon which the People relied was a broken arm suffered by M.S.H. in January of 1979 while in her parents' physical custody. The parents' explanation of the way the fracture occurred was inconsistent with the nature of the break. After deliberations, the jury found that M.S.H. was a dependent and neglected child.
A detailed treatment plan was developed, and implementation of the plan was ordered by the court on October 12, 1979. The plan included therapy and counselling for the parents under the supervision of an inter-disciplinary team of professionals at a mental health center in Monticello, Utah.[1] The child was to be returned to her parents, with provisions for temporary in-home supervision *1296 by a qualified person, followed by close monitoring of the family's progress by members of the team.
The in-home supervisor saw no bruises on the child during the period of supervision. When the supervision ended the Utah social workers again began to observe bruises during their periodic examinations of the child pursuant to the treatment plan. On February 19, 1980, a social worker saw the child and noted various injuries. She took M.S.H. to Dr. Jerrold C. Smith, who examined her. The doctor discovered symmetrical bruises on the child's face and on her thighs, a large burn or abrasion on her right hip, deep scratch marks on her back, and scabbing on the child's anterior chest. Asked to explain the injuries, the mother said that M.S.H. was not well coordinated and fell frequently. She attributed the scratches to an encounter with the family's cat. Dr. Smith formed the opinion that the injuries were caused by child abuse. M.S.H. was once again removed from her home, and the People filed a motion in district court to terminate the parent-child legal relationship between M.S.H. and each of her parents.
The witnesses at the termination hearing included Dr. Smith, Dr. McGrath, each of the parents, and members of the Utah team of professionals who had administered the treatment plan. The evidence was conflicting. Both doctors were of the opinion that most of the February 19, 1980, injuries were inflicted, not accidental, and Dr. McGrath expressed the opinion that the injuries resulted from child abuse. The two doctors based their opinions in substantial part on the fact that statistical studies show that symmetrical and centrally located bruises and abrasions are consistent with inflicted, rather than accidental, injuries. A psychologist testified that, based on his examinations of the parents, each was unfit and unlikely to become a fit parent within a reasonable period of time. However, the public health nurse and the clinical psychologist who were members of the Utah professional team expressed the view that the injuries did not result from child abuse. The parents each denied abusing the child. The trial court found the evidence to be clear and convincing that the criteria in section 19-11-105(1)(b), C.R.S.1973 (1978 Repl.Vol. 8) for termination of parental rights were met[2] and also ruled that the statute is not unconstitutionally vague. It therefore ordered termination of the parent-child legal relationship between M.S.H. and each of her parents.
On this appeal the parents do not challenge the determination that M.S.H. is a dependent or neglected child. They claim, however, that the court erred in terminating their parental rights for the reasons that the evidence was insufficient to support that remedy and a tape recording of an interview with the mother while she was under hypnosis was erroneously excluded from evidence. They also assert error because the trial court did not announce in advance of presentation of evidence that the bases for termination must be established by clear and convincing evidence. Additionally, the parents challenge the constitutional sufficiency of the Parent-Child Legal Relationship Termination Act of 1977, sections 19-11-101 to -110, C.R.S.1973 (1978 Rep.Vol. 8) (1982 Supp.), on the ground that the criteria for termination of parental rights are unconstitutionally vague.

I.
We first address the parents' challenge to the sufficiency of the evidence. They assert simply that because most, if not all, of the evidence with respect to the origin of the injuries is circumstantial it is inadequate to establish the grounds for termination of parental rights. We disagree. It is well established that there is no qualitative difference between direct and circumstantial evidence. People v. Bennett, 183 Colo. 125, 515 P.2d 466 (1973). The *1297 evidence here is fully sufficient to support termination of the parent-child legal relationship.
The record reflects a pattern of frequent bruises and other injuries to M.S.H. while in the parents' physical custody, contrasted with few such occurrences while the child was in the care of others. The spiral nature of the fracture of the arm was inconsistent with the parents' story that the break occurred when the child caught her arm in a chair. The symmetry of some of the bruises and the location of others were strongly indicative of non-accidental injuries. Dr. McGrath testified that bruises he observed were caused by child abuse to a reasonable degree of medical certainty. Without further detailing the evidence, it suffices to say that it clearly and convincingly establishes a pattern of physical abuse of the child by her parents beginning at birth and continuing each time they had physical custody of the child.
The trial court found that the child was adjudicated dependent and neglected, an appropriate treatment plan approved by the court had not been reasonably complied with and had not been successful, each parent is unfit, and that two years of effort by child care agencies had been unsuccessful in rehabilitating the parents. The court found that continuation of the family relationship would risk permanent psychological or physical disablement of the child and perhaps even death. Though the record presents conflicting evidence on some matters, it is the trial court's province to judge the credibility of the witnesses, the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn from the evidence. People in the Interest of C.A.K., 652 P.2d 603 (Colo.1982). We have reviewed the record in its entirety and are satisfied that each of the trial court's findings is supported by clear and convincing evidence.

II.
The parents contend that the court should have received in evidence the "hypnotic state and all of the evidence surrounding the hypnotic state which was administered by Dr. Bodin to [the mother]." We find no error in the trial court's rulings as to this tendered evidence.
Counsel for the parents offered two items of evidence with respect to Dr. Bodin's examination of the mother. The first was the doctor's deposition, which was received and considered by the court. The second was a tape recording, purportedly of an interview with the mother while under hypnosis. The court rejected this tape for various reasons including lack of scientific reliability. The parents' counsel conceded that he had not heard the tape and did not know its contents. Therefore, he made no offer of proof and can point to no prejudice resulting from the exclusion of this proffered evidence. The tape was not designated as an exhibit and was not transmitted with the record on appeal. Based on this record we are unable to evaluate the admissibility of the tape, and so cannot consider the parents' assertion that the trial court erred in excluding it from evidence. We therefore presume that the trial court's exclusion of this evidence was correct. Till v. People, 196 Colo. 126, 581 P.2d 299 (1978).

III.
The parents contend that the grounds for termination of parental rights must be established by clear and convincing evidence rather than a mere preponderance of the evidence in order to satisfy due process of law because of the fundamental importance of the parent-child legal relationship. This is correct. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); People in the Interest of C.A.K., supra; People in the Interest of A.M.D. and M.D., 648 P.2d 625 (Colo.1982). The trial court, acting before it had the benefit of Santosky and A.M.D., reached precisely the same conclusion and adopted and applied a clear and convincing evidence standard in the present case.
The parents insist, however, that reversible error occurred because the court did not announce in advance of trial that *1298 the clear and convincing standard would be applied. The parents can point to no prejudice from their asserted lack of knowledge as to the burden of proof that would be applied, nor can we perceive prejudice to them. It is the People who bear the burden of proof in a parental rights termination proceeding. If any prejudice resulted from lack of knowledge that the court would apply a burden of proof more demanding than a preponderance of the evidence, only the People would be adversely affected. The People prevailed and so have no complaint. The parents' argument is not well taken.

IV.
Finally, the parents claim that the statutory standards for termination of parental rights are so vague that they do not accord due process of law to the parents. We reach the contrary conclusion.
The statutory provisions that are the subject of the parents' argument are set forth in section 19-11-105, C.R.S.1973 (1978 Rep. Vol. 8) as follows:
Criteria for termination. (1) The court may order a termination of the parent-child legal relationship upon the finding of either of the following:
* * * * * *
(b) That the child is adjudicated dependent or neglected and all of the following exist:
(I) That an appropriate treatment plan approved by the court has not been reasonably complied with by the parent or parents or has not been successful;
(II) That the parent is unfit;
(III) That the conduct or condition of the parent or parents is unlikely to change within a reasonable time.
(2) In determining unfitness, conduct, or condition, the court shall find that continuation of the legal relationship between parent and child is likely to result in grave risk of death or serious injury to the child or that the conduct or condition of the parent or parents renders the parent or parents unable or unwilling to give the child reasonable parental care. In making such determinations, the court shall consider, but not be limited to, the following:
(a) Emotional illness, mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely within a reasonable time to care for the ongoing physical, mental, and emotional needs of the child;
(b) Conduct towards the child of a physically or sexually abusive nature;
(c) History of violent behavior;
(d) A single incident of life-threatening or gravely disabling injury or disfigurement of the child;
(e) Excessive use of intoxicating liquors or narcotic or dangerous drugs which affect the ability to care and provide for the child;
(f) Neglect of the child;
(g) Long-term confinement of the parent;
(h) Injury or death of a sibling due to proven parental abuse or neglect;
(i) Reasonable efforts by child-caring agencies which have been unable to rehabilitate the parent or parents.
(3) In considering any of the factors in subsection (2) of this section in terminating the parent-child legal relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child. The court shall review and order, if necessary, an evaluation of the child's physical, mental, and emotional conditions.
Although the parents' challenge to the termination standards of section 19-11-105 on vagueness grounds is all-inclusive, their specific argument is directed to only two parts of the statute. They urge that the term "unfit" is insufficiently specific and that one of the statutory considerations in determining whether a person is unfit, i.e., whether the parents are unable or unwilling to give the child "reasonable parental care," is itself impermissibly vague.
It is axiomatic that a statute is presumed to be constitutioanl. E.g., People in *1299 the Interest of C.M., 630 P.2d 593 (Colo. 1981); People v. Albo, 195 Colo. 102, 575 P.2d 427 (1978). For the purpose of the present case, we consider that presumption a sufficient answer to the parents' general assertions of unconstitutionality that are not supported by identification of particular statutory terms to which the vagueness claim is addressed. Therefore, we limit our discussion to the question of whether unfitness is adequately defined.
An essential element of the claim that the parental rights of E.H. and S.H. should be terminated is that the parents are unfit. Section 19-11-105(1)(b)(II), C.R.S. 1973 (1978 Repl.Vol. 8). Specific meaning is given to the term "unfit" by section 19-11-105(2), which requires, in the alternative, that the court find "that continuation of the legal relationship between parent and child is likely to result in grave risk of death or serious injury to the child" or "that the conduct or condition of the parent or parents renders the parent or parents unable or unwilling to give the child reasonable parental care."[3] In making these determinations, the court is directed to consider nine specific factors detailed in section 19-11-105(2), which is quoted in full above.
The parents argue that "reasonable parental care" is a term too indefinite to satisfy constitutional standards. We disagree. This term must be interpreted in light of the specific factors the court is directed to consider in determining whether a parent is unwilling or unable to give a child reasonable parental care. See section 19-11-105(2)(a) through (i). These factors address problems of a serious nature, presenting obvious hazards to the physical or mental well-being and development of a child. Thus, a court must evaluate the mental health of the parents, their physical or sexual abuse of the child, any history of their violent behavior, any single incident of life-threatening or gravely injurious conduct toward the child, excessive use of drugs or intoxicants affecting their ability to care for their child, neglect, long-term confinement, injury or death of a sibling by reason of parental abuse or neglect, and their failure to respond to reasonable rehabilitative programs. These considerations illuminate the salient concerns summarized by the term "reasonable parental care." See People in the Interest of C.A.K., supra. The legislative intent that termination of parental rights is appropriate only when a child's physical or mental well-being is seriously threatened by the continuation of the parent-child relationship is further indicated by the express purposes of the Colorado Children's Code to accomplish care and guidance of each child, "preferably in his own home", "[t]o preserve and strengthen family ties whenever possible," and "[t]o remove the child from the custody of his parents only when his welfare and safety... would otherwise be endangered." Section 19-1-102, C.R.S.1973 (1978 Repl.Vol. 8). See People in the Interest of M.B., 188 Colo. 370, 535 P.2d 192 (1975); People in the Interest of M.M., 184 Colo. 298, 520 P.2d 128 (1974); People in the Interest of K.S. and M.S., 33 Colo.App. 72, 515 P.2d 130 (1973).
Many of the same values served by the vagueness doctrine with respect to criminal statutes are also relevant in considering whether the parental rights termination statute is sufficiently definite. See People v. Jennings, 641 P.2d 276 (Colo.1982); People in the Interest of D.A.K., 198 Colo. 11, 596 P.2d 747 (1979). In considering the sufficiency of a criminal statute against a vagueness challenge, we said in People v. Smith, 638 P.2d 1, 3 (Colo.1981):

*1300 Several basic values are served by the prohibition of vague statutes. The requirement of fundamental fairness embodied in the concept of due process of law forbids prosecution of any individual for conduct which he would not reasonably understand to be proscribed. E.g., People v. Garcia, 189 Colo. 347, 541 P.2d 687 (1975). The vagueness doctrine also seeks to minimize that potential for arbitrary and discriminatory enforcement which inheres in criminal statutes of uncertain prohibitory scope. E.g., People in the Interest of C.M., supra; People v. District Court, 185 Colo. 78, 521 P.2d 1254 (1974). It serves as well to assure that courts and juries have adequate standards to enable them to apply the law consistently and in accord with legislative intent. See People v. Hoehl, [193 Colo. 557, 568 P.2d 484 (1977) ]; People v. Garcia, [supra].

See e.g., People v. Jennings, supra; People in the Interest of C.M., supra.
The fact that the line separating those parents unwilling or unable to provide reasonable parental care from those having such willingness and ability may be difficult to draw is not a fatal defect. Such absence of litmus test precision is inherent in attempts to define conduct and conditions that make continuation of the parent-child legal relationship so detrimental to the child's physical or mental well-being as to be societally unacceptable. We recognize the tension between the need for definiteness of statutory description and the goal of describing a wide variety of proscribed conduct in Colorado Auto & Truck Wreckers Ass'n v. Dep't of Revenue, Colo., 618 P.2d 646, 651 (1980), where we stated:
There are reciprocal stresses present in statutory drafting. A statute must be sufficiently specific in order to give fair warning of the conduct prohibited and, simultaneously, sufficiently general to address the essential problem under varied circumstances and during changing times.
With this recognition we have held that scientific exactitude in statutory language is not required to satisfy due process. People v. Smith, supra; People v. Jennings, supra; People v. Blue, 190 Colo. 95, 544 P.2d 385 (1975). As we said in People in the Interest of D.A.K., supra, in holding the "mistreatment or abuse" standards for a dependency or neglect determination to be sufficiently definite,
Fundamental fairness does not require a statute to enumerate in all-encompassing examples, or exactly described acts, precisely how poorly a parent can treat a child before risking loss of parental rights. [Citation omitted.]. Our legal system occasionally requires courts to draw lines....
Furthermore, the statute is as explicit as could be in order to accomplish the purposes intended. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1946). The protection of an abused or mistreated child is an area of legitimate legislative concern which does not lend itself to more precise definition. A legislature would find it extremely difficult, if not impossible, to write a statute more specific to accomplish the purposes of protecting the child's safety and welfare while still allowing the juvenile court reasonable flexibility in determining the best interests of the child and society in each case.
198 Colo. at 17, 596 P.2d at 751. See People v. Taggart, 621 P.2d 1375 (Colo.1981) (definition of child abuse is sufficiently definite to pass constitutional scrutiny); People v. Mann, 646 P.2d 352 (Colo.1982) (child abuse sufficiently defined to pass constitutional muster); People in the Interest of V.A.E.Y. H.D., 199 Colo. 148, 605 P.2d 916 (1980) (upholding "whose environment is injurious to his welfare" as a constitutionally sufficient standard for a determination of dependency or neglect); People in the Interest of C.S., Colo., 613 P.2d 1304 (1980) (sustaining former statute with respect to termination of parental rights against a vagueness challenge).
We conclude that the parental rights termination statute is sufficiently definite to provide notice of the conduct or conditions *1301 upon which termination of the relationship can be predicated, adequately minimizes the potential for arbitrary and discriminatory application, and gives the courts sufficient guidelines to enable them to apply the law consistently and in accord with legislative intent. Accordingly, we reject the parents' contention that the statute violates due process of law.
We affirm the judgment of the district court.
NOTES
[1] The child and the parents were placed in Utah at the suggestion of the court because of the parents' distrust of the La Plata County authorities.
[2] Although the court's findings do not precisely track the language of section 19-11-105(1)(b), they reflect that all criteria prescribed by statute were met. The parents do not contest the findings or conclusions on this basis.
[3] It perhaps would be sufficient to note that the basis upon which the parents were found unfit was that the continuation of the legal relationship between parent and child would likely result in grave risk of death or serious injury to the child. The court did not ground its judgment on the alternate basis for unfitness to which the parents address their challengethe inability or unwillingness of the parents to give the child reasonable parental care. See People in The Interest of C.M., supra (generally, one is not entitled to challenge the constitutionality of a statute unless he is adversely affected by its application to him in a given case). We elect, however, to consider the vagueness argument as related to the termination criteria in their totality.