## No. 27509

**People of the State of Colorado, in the Interest of C.S.M., a child, and Concerning P.D.M., A.B.M., and Mesa County Department of Social Services, and V.D.**

(570 P.2d 229)

Decided September 19, 1977.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General; Clay E. Hanlon, Frank F. Spiecker, for plaintiff-appellee.

Richard M. Hall, for respondent-appellant.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The district court, acting in its capacity as a juvenile court, issued a protective order against V.D., a seventeen-year-old girl, prohibiting her from associating with C.S.M., a fifteen-year-old girl. V.D. appeals. We affirm.

At a detention hearing concerning C.S.M., testimony indicated that association with V.D. had been a bad influence on C.S.M. C.S.M.'s probation officer had attempted to terminate the girls' relationship by including a non-fraternization provision in C.S.M.'s probation order. When that proved ineffective, the juvenile court issued the protective order here challenged. V.D. and her parents filed a motion to quash the order, whereupon the court, after making V.D. a party to the action, reaffirmed the order against her.

The district court's jurisdiction over C.S.M. is not disputed. *See* section 19-1-104, C.R.S. 1973.[1] Nor is it disputed that under section 19-3-110, C.R.S. 1973,[2] the trial court had the general power to issue orders to protect the child's welfare. The appellant contends, however, that she is not

---

[1] "19-1-104. *Jurisdiction.* (1) Except as otherwise provided by law, the juvenile court shall have exclusive original jurisdiction in proceedings:
(a) Concerning any delinquent child, as defined in section 19-1-104(2) and (9), but concerning a delinquent child as defined in section 19-1-103(9)(c), the court may refuse to accept jurisdiction in the case;
(b) Concerning any child in need of supervision, as defined in section 19-1-103(5); . . . ."

[2] "19-3-110. *Order of protection.* (1) The court may make an order of protection in assistance of, or as a condition of, any decree of disposition authorized by this article. The order of protection may set forth reasonable conditions of behavior to be observed for a specified period by the parent, guardian, or any other person who is party to a proceeding brought under section 19-1-104(1)(a), (1)(b), or (1)(c).
(2) The order of protection may require any such persons:
(a) To stay away from a child or his residence; . . . ."

within the statutorily defined category of persons against whom protective orders may issue in cases of this nature. Therefore, she argues, the trial court had no jurisdiction to enter the order against her.

■ The statute clearly and explicitly provides that a protective order may limit the behavior of "the parent, guardian, or *any other person who is a party* to a proceeding brought under section 19-1-104(1)(a), (1)(b), or (1)(c)." Section 19-3-110, C.R.S. 1973. (Emphasis added.) This plain language contemplates no limitation except that the person subject to the order be a party to the action, and we will not strain to construe the statute to require more. It follows that once V.D. had been made a party,[3] the court had jurisdiction to issue the protective order against her.

■ V.D.'s second contention is that if the statute does give the juvenile court such broad jurisdiction to issue protective orders, it violates her right of free association thus violating the First Amendment to the United States Constitution. We do not agree.

Although the appellant characterizes the case differently, the real issue here is not V.D.'s right to associate, but rather C.S.M.'s right to be free from associations which are or may be harmful to her. One of the stated purposes of the Colorado Children's Code, of which the challenged provision is a part, is to "secure for each child subject to these provisions such care and guidance . . . as will best serve his welfare and the interests of society. . . ." Section 19-1-102, C.R.S. 1973. The Code reflects society's recognition that a minor is not always capable of making decisions in his or her own best interest. Thus the juvenile court is empowered to make certain decisions for the minor. The court in this case has made such a decision, and neither C.S.M. nor her parents have challenged that decision. Thus, all parties who could purport to make decisions on behalf of C.S.M. have agreed that the relationship between C.S.M. and V.D. should terminate. Despite this consensus, V.D. contends that she has a constitutionally protected right to associate with C.S.M. without C.S.M.'s consent and in spite of both the court's order and the express desires of C.S.M.'s parents.

■ One's right of free association does not extend so far as to force another to associate with one against the other person's will. Here, C.S.M., through her parents, has requested, and the juvenile court has ordered, that V.D. stay away from her. To accept V.D.'s contention and hold that C.S.M. may not so limit her choice of companions would establish a precedent that would leave persons powerless to protect themselves against

---

[3]Section 19-3-103(4), C.R.S. 1973, provides:
"The court on its own motion or on the motion of any party may join as a respondent or require the appearance of any person it deems necessary to the action. . . ."

unwanted, annoying, or harassing intrusions of their privacy. Yet there are common situations where the law recognizes that persons *can* invoke judicial power to protect privacy, and where violations can result in fines or imprisonment. *See, e.g.*, section 14-10-129, C.R.S. 1973 (permitting courts to deny a parent's visitation rights if the child's welfare is endangered); section 18-9-111, C.R.S. 1973 (anti-harassment statute); *Galella v. Onassis*, 487 F.2d 986 (2d Cir. 1973) (photographer enjoined from harassing president's widow); *Dickson v. Dickson*, 12 Wash. App. 183, 529 P.2d 476 (1974), *cert. denied*, 423 U.S. 832, 96 S.Ct. 53, 46 L.Ed.2d 49, *reh. denied*, 423 U.S. 991, 96 S.Ct. 406, 46 L.Ed.2d 311 (defendant enjoined from harassing his ex-wife.)[4]

In fact, the appellant implicitly concedes that under the statutory provision here challenged a court may prohibit a parent or guardian from associating with a child. Surely a stranger's right to associate with a child cannot be subject to less limitation than a parent's right. In either case, the court is deciding, on behalf of the child, which associations are better to be avoided, and the *child's* interests, not the other party's desires, must prevail.

In short, the First Amendment does not compel one to submit to unwanted or detrimental association with another. The interest asserted by V.D. is, at best, vague, speculative, and unsupported by precedent. Clearly any interest V.D. might have is outweighed by the interest of the state and C.S.M.'s parents in C.S.M.'s welfare.

Therefore, the trial court's order is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES concur in the result.

---

[4]For general discussions of the development of the analogous "right to be let alone," *see* Warren and Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890); Prosser, *Privacy*, 48 Calif. L. Rev. 383 (1960); *Annot.*, 43 L.Ed.2d 871 (1975); Abrams, *The Press, Privacy and the Constitution*, New York Times Magazine 11 (Aug. 21, 1977).