The PEOPLE of the State of Colorado, Petitioner,

v.

The DISTRICT COURT FOR COLORADO'S SEVENTEENTH JUDICIAL DISTRICT, and One of Its Judges, the Honorable Richard Borchers, Respondents.

No. 86SA58.

Supreme Court of Colorado,
En Banc.

Jan. 20, 1987.

James F. Smith, Dist. Atty., Seventeenth Judicial Dist. Steven L. Bernard, Chief Trial Deputy, Brighton, for petitioner.

Randall J. Davis, Westminster, for respondents.

Carpenter & Johnson, P.C., William L. Carpenter, Craig D. Johnson, Lakewood, Frederic W. Schrekinger, Golden, guardians ad litem, for J.C. in No. 84JN0306.

Shaklee & Richey, Barbara J. Shaklee, Denver, guardian ad litem, for S.D., E.D., and A.D. in No. 85JN0310.

William A. Richey, Denver, guardian ad litem, for P.L. in No. 85JN0318.

The Children's Legal Clinic, Sharon F. Shink, Denver, guardian ad litem, for A.R. in No. 85JN0268, and E.W. and R.W., Jr. in No. 85JN0286.

Deborah Brown Kovac, Denver, Kent C. Schroeder, Westminster, amici curiae.

LOHR, Justice.

This is an original proceeding pursuant to C.A.R. 21. The People seek relief in the nature of prohibition to vacate protective orders entered by the Adams County District Court in six dependency and neglect proceedings pending in the juvenile division of that court. The orders add certain district attorneys and sheriff and police officers as parties to the dependency and neglect proceedings, prohibit those persons from questioning employees of the Adams County Department of Social Services concerning statements given by designated respondents in the course of court-ordered treatment plans, and prohibit the use of such statements in any criminal or civil proceeding. Each respondent protected by the orders is a parent whose sexual abuse of a child was a basis for the dependency and neglect proceeding in which a challenged protective order was issued. The People contend that the district court lacked authority to enter the protective orders and that such orders improperly interfere with the duty of child care workers to report child abuse and of law enforcement officers to investigate criminal activity. We conclude that the district court had authority to issue the orders in question and did not abuse its discretion by doing so. We therefore discharge the rule to show cause.

I.

A recitation of the specific facts of each of the six cases that are the subjects of this

original proceeding is not necessary for an understanding of the issues. In each case one or more children were adjudicated to be dependent or neglected as a result of either a trial or admissions by the respondent parents. In each case the petition in dependency or neglect alleged sexual abuse of a child by one or both of the respondent parents, but in some of the cases the admissions upon which the adjudication was based did not relate to the alleged sexual misconduct.

The court approved a treatment plan in each case, requiring the parents to work with a therapist or social worker in the Adams County Department of Social Services (department) concerning the sexual abuse issue. *See* § 19-3-111(1)(e), 8B C.R.S. (1986). When the treatment plans were approved, some of the respondent parents were subject to criminal charges or were under investigation by law enforcement authorities for the same sexual abuse that was involved in the dependency or neglect actions. Those parents were unwilling to participate in the treatment plans if their statements could be used against them in criminal prosecutions, and they requested protective orders from the court. The district attorney objected, and the court held hearings on the requests. Following the hearings, the court overruled the objections and issued protective orders with respect to each allegedly abusive parent, prohibiting the district attorney and law enforcement officials from questioning that parent and prohibiting use of any statement made by that parent during the course of the treatment plan in any criminal or civil proceeding. Each order expressly excluded from its protective provisions any disclosure of plans for future criminal conduct or past criminal conduct not related to the treatment plan. Each order also specified that it did not apply to the child or to respondents other than the designated parent.

The People seek to overturn the protective orders by this proceeding under C.A.R. 21, challenging the jurisdiction of the district court to grant the relief provided by the orders. We first review the statutory provisions upon which the protective orders are based and then consider the specific objections advanced by the People.

II.

The Colorado Children's Code, Title 19, 8B C.R.S. (1986), provides a comprehensive scheme to remedy transgressions of the law by children and to protect children from abuse, mistreatment and neglect. *See generally In re A.M.D.,* 648 P.2d 625 (Colo.1982); *In re M.B.,* 188 Colo. 370, 535 P.2d 192 (1975); *In re M.M.,* 184 Colo. 298, 520 P.2d 128 (1974); *City & County of Denver v. Juvenile Court,* 182 Colo. 157, 511 P.2d 898 (1973); *In re B.M.C.,* 32 Colo. App. 79, 506 P.2d 409 (1973). The legislative purposes in adopting the children's code are broadly stated as follows:

(a) To secure for each child subject to these provisions such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;

(b) To preserve and strengthen family ties whenever possible, including improvement of home environment;

(c) To remove a child from the custody of his parents only when his welfare and safety or the protection of the public would otherwise be endangered and, in either instance, for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child; and

(d) To secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him in becoming a responsible and productive member of society.

§ 19-1-102(1), 8B C.R.S. (1986). The legislature specified that in order to carry out its goals, the provisions of the children's code "shall be liberally construed to serve the welfare of children and the best interests of society," § 19-1-102(2), 8B C.R.S. (1986), and the courts have sought to give effect to this directive. *See, e.g., In re M.H.,* 661 P.2d 1173, 1175 (Colo.1983); *In re A.M.D.,* 648 P.2d at 639-40; *R.M. v.*

*District Court*, 191 Colo. 42, 44, 550 P.2d 346, 348 (1976); *In re M.K.A.*, 182 Colo. 172, 174, 511 P.2d 477, 478 (1973); *City & County of Denver v. Juvenile Court*, 182 Colo. at 163, 511 P.2d at 901.

The cases now before us all involve children who have been adjudicated to be dependent or neglected. The children's code defines a "dependent or neglected child" to include a child "[w]hose parent ... has subjected him to mistreatment or abuse." § 19–1–103(20)(a), 8B C.R.S. (1986). Jurisdiction in proceedings concerning dependent or neglected children is vested exclusively in the "juvenile court," i.e., the juvenile division of the district court. § 19–1–104(1)(c), 8B C.R.S. (1986); § 19–1–103(18), 8B C.R.S. (1986).

After issuing an order adjudicating a child as dependent or neglected, the juvenile court must hear evidence on the proper disposition best serving the interests of the child and the public. § 19–3–109(1), 8B C.R.S. (1986). The court must then approve an appropriate treatment plan "involving the child named and each respondent named and served in the action." § 19–3–111(1)(e)(I). Such a plan must be "reasonably calculated to render the particular respondent fit to provide adequate parenting to the child within a reasonable time and which is relative to the child's needs." § 19–3–111(1)(e)(II). *See generally In re C.A.K.*, 652 P.2d 603 (Colo.1982). The plan must make appropriate provisions for legal custody and may include orders for examination and treatment of the child by medical and mental health professionals. § 19–3–111(1). In each of the six cases involved in the present proceeding, the court determined that the treatment plan should include counseling with a therapist or social worker in the department in an effort to correct the actions of the abusive parent so that the parent would become "fit to provide adequate parenting." *See* § 19–3–111(1)(e)(II).

The Colorado Children's Code also gives the juvenile courts specific authority to take certain ancillary action to assure that the basic statutory charge to serve the welfare of the children and the best interests of society can be fully implemented. Pertinent to the present proceeding are the court's authority to join additional parties under section 19–3–103(4), 8 C.R.S. (1986), and to issue protective orders under section 19–3–110, 8B C.R.S. (1986).

Section 19–3–103(4) provides for joinder of additional parties and states in pertinent part: "The court on its own motion or on the motion of any party may join as a respondent or require the appearance of any person it deems necessary to the action and authorize the issuance of a summons directed to such person." It was pursuant to this authority that the district attorney and other law enforcement officials were subjected to the jurisdiction of the court in the cases now before us.

Section 19–3–110 provides for issuance of protective orders. It authorizes "an order of protection in assistance of, or as a condition of" any dependency or neglect decree and provides that the order "may set forth reasonable conditions of behavior to be observed for a specified period by the parent ... or any other person who is a party" to the proceeding. § 19–3–110, 8B C.R.S. (1986). The statute goes on to list certain types of protective orders specifically contemplated under the general legislative authorization for such orders.[1] The court

---

1. Section 19–3–110, 8B C.R.S. (1986), provides in pertinent part:

The court may make an order of protection in assistance of, or as a condition of, any decree authorized by this article. The order of protection may set forth reasonable conditions of behavior to be observed for a specified period by the parent, the guardian, or any other person who is party to a proceeding brought under section 19–1–104(1)(a), (1)(b), or (1)(c).

(2) The order of protection may require any such person:

(a) To stay away from a child or his residence;

(b) To permit a parent to visit a child at stated periods;

(c) To abstain from offensive conduct against a child, his parent or parents, his guardian, or any other person to whom legal custody of a child has been given;

relied in part upon this statutory authority and in part upon its mandate to approve an appropriate treatment plan in issuing the protective orders challenged in this case.

We must now examine the objections proffered by the People to the issuance of the protective orders.[2]

### III.

#### A.

The People urge that the juvenile court possesses only that jurisdiction conferred upon it by statute and that no statute authorizes that court to restrain the police and the district attorney from investigating possible violations of criminal laws or to intrude into criminal cases in which adults are charged with abusing children. The People contend that the juvenile court has created a new exclusionary rule in absence of constitutional violation or statutory authority and is improperly shielding the abusive parents from criminal prosecution rather than confining itself to its proper role of protecting the interests of the abused children. We believe that these objections mischaracterize the court's actions.

The juvenile court was required to approve treatment plans "reasonably calculated to render the particular respondent fit to provide adequate parenting to the child

within a reasonable time and which is relative to the child's needs." § 19–3–111(1)(e)(II), 8B C.R.S. (1986). This requirement furthers the legislative purpose to preserve and strengthen family ties and to remove a child from the custody of his parents only when his welfare or safety or the protection of the public would otherwise be endangered. *See* § 19–1–102(1), 8B C.R.S. (1986); *In re C.A.K.*, 652 P.2d 603 (Colo.1982); *In re M.M.*, 184 Colo. 298, 520 P.2d 128 (1974).

In each case the court had information that the parent or parents had been sexually abusing the subject child. Unless that situation could be remedied and reasonable assurance obtained that any such incidents would not be repeated, the offending respondents could not be rendered "fit to provide adequate parenting." In its discretion, the court determined that counseling provided the appropriate means to address the problems. Such counseling, however, could not be expected to succeed unless there existed an environment promoting free and open communication between the abusive parents and the counselors. *Cf. Bond v. District Court*, 682 P.2d 33, 38–40 (Colo.1984) (open communication is essential to assure that a psychologist or psychiatrist can treat a patient effectively). The abusive parents were unwilling to participate if faced with the prospect that the

(d) To give proper attention to the care of the home;

(e) To cooperate in good faith with an agency:

(I) Which has been given legal custody of a child;

(II) Which is providing protective supervision of a child by court order; or

(III) To which the child has been referred by the court;

(f) To refrain from acts of commission or omission that tend to make a home an improper place for a child;

(g) To perform any legal obligation of support; or

(h) To pay for damages recoverable under the provisions of section 13–21–107, C.R.S.

(2.5) When such an order of protection is made applicable to a parent or guardian, it may specifically require his active participation in the rehabilitation process and may impose specific requirements upon such par-

ent or guardian, subject to the penalty of contempt for failure to comply with such order without good cause, as provided in subsection (4) of this section.

**2.** The guardian ad litem in two of the cases before us supports the authority of the juvenile court to issue protective orders but takes issue with the appropriateness of the treatment plan in one of the cases because of the allegedly lengthy history of abusive conduct by one of the respondents and his record of unresponsiveness to treatment. Our rule to show cause does not extend to the question of the appropriateness of any of the treatment plans. The record is not sufficient for an adequate review of the plans even if we considered such review to be within the scope of this original proceeding. Accordingly, we do not address this issue and express no opinion whether the treatment plans involved in the cases before us reflect a proper exercise of the juvenile court's discretion.

statements would be used in criminal proceedings, and requested the court to protect them against that eventuality. This prospect was very real, for in some cases criminal proceedings had already been filed, while in others investigations were in progress.

■ Under these circumstances the juvenile court concluded that to create an appropriate treatment plan it was necessary to preserve the confidentiality of the communications. In order to assure that law enforcement officials would not seek to learn the content of such communications, the court deemed it necessary to join them as parties under section 19-3-103(4), 8B C.R.S. (1986). We hold that the circumstances established the need for this action and that the statutory authority is fully sufficient to support it.

In entering the protective orders, the court relied in part on section 19-3-110, set forth earlier in footnote 1. We recognize that the types of protective orders specifically described in section 19-3-110(2) do not expressly encompass the type of order entered here. However, we do not construe that statute to limit the nature of protective orders a court may enter. The requirement in section 19-3-111 that the court order an appropriate treatment plan implicitly authorizes the court to issue such orders as are reasonably necessary to implement that mandate.

We have previously considered the authority of a juvenile court to join a party and issue a protective order against that party in furtherance of the best interests of a child who was the subject of a proceeding under the children's code. *In re C.S.M.*, 194 Colo. 76, 570 P.2d 229 (1977). In that case, the juvenile court issued a protective order against V.D., a seventeen-year-old girl, prohibiting her from associating with C.S.M., a fifteen-year-old girl who was the subject of the action. V.D., after

being made a party to the action, appealed from the denial of her motion to quash the protective order, contending that the court had no jurisdiction to enter the order against her as she was not "within the statutorily defined category of persons against whom protective orders may issue in cases of this nature." *Id.* at 77-78, 570 P.2d at 230. We upheld the addition of V.D. as a party to the action, simply citing section 19-3-103(4), which authorizes the court to "join as a respondent ... any person it deems necessary to the action...." *Id.* at 78, n. 3, 570 P.2d at 230, n. 3. We then affirmed the juvenile court's protective order and held that section 19-3-110 "contemplates no limitation except that the person subject to the order be a party to the action, and we will not strain to construe the statute to require more." *Id.* at 78, 570 P.2d at 230.

We conclude, therefore, that the juvenile court did not exceed its jurisdiction in joining the district attorney and law enforcement officers as parties to the case and issuing the protective orders at issue here.[3]

### B.

■ The People also argue that the juvenile court's protective orders interfere with the statutory duty to report evidence of child abuse as set forth in section 19-10-104, 8B C.R.S. (1986). The statute provides that specified persons

who [have] reasonable cause to know or suspect that a child has been subjected to abuse or neglect or who [have] observed the child being subjected to circumstances or conditions which would reasonably result in abuse or neglect shall immediately report or cause a report to be made of such fact to the county department or local law enforcement agency.

§ 19-10-104(1), 8B C.R.S. (1986). The persons required to make such a report include hospital personnel, physicians, dentists, nurses, school employees, social

---

3. One of the guardians ad litem notes that the juvenile court could have achieved the same result by directing the protective orders to the employees of the Adams County Department of Social Services instead of the district attorney and law enforcement officers. However, this was not the relief adopted by the juvenile court. We must determine the legal sufficiency of the protective orders in the form that they were issued.

workers, workers in a family care home or child care center, and mental health professionals. § 19–10–104(2), 8B C.R.S. (1986). The People assert that these statutes further the legislature's general aim of encouraging the "complete reporting of child abuse" in order to "protect the best interests of children of this state and to offer protective services in order to prevent any further harm to a child suffering from abuse." § 19–10–102, 8B C.R.S. (1986). We recognize this duty and the importance of the goals the legislature has sought to attain by requiring the reporting of child abuse. We conclude, however, that the duty is not pertinent to the circumstances before us.

In all of the cases in which the challenged protective orders have been issued, initial suspicions of sexually abusive conduct have been reported. Here the children have been adjudicated dependent or neglected, the court has ordered a treatment plan that is "reasonably calculated to render [the parents] fit to provide adequate parenting[,]" § 19–3–111(1)(e)(II), 8B C.R.S. (1986), and the parents have expressed a willingness to participate in the treatment plans. Although it may be that the protected statements might yield additional information concerning the nature and extent of the misconduct, we conclude that the duty to report has been performed and that the protective orders can be implemented without violation of the reporting requirement of section 19–10–104(1). Therefore, the People's argument that the district court's orders interfere with the social workers' duty to report child abuse has no merit.

## C.

The People also contend that the legislature has not recognized any privilege for communications between the participants in court-ordered treatment plans and the department's social workers and therapists who conduct counseling sessions as part of such plans. Absent specific legislative authorization, the People argue, there can be no privilege. We reject this position as unsound.

As we have previously held, there is legislative authority for the protection of the type of communications at issue here. This authority is derived from the statutory mandate for the approval of appropriate treatment plans for children adjudicated as dependent or neglected. *See* § 19–3–111, 8B C.R.S. (1976). This mandate could not be given effect without assurance that abusive parents can speak freely with their professional counselors concerning the sexually abusive conduct on which the treatment plan is centered. *Cf. Bond v. District Court,* 682 P.2d 33, 38–40 (Colo.1984) (recognizing the importance of confidentiality of communications between a patient and his mental health therapist to assure the trust that is essential to effective treatment); *Gelfand v. People,* 196 Colo. 487, 586 P.2d 1331 (1978) (it would contravene principles of public policy and fundamental fairness to permit statements made by defendant to a probation officer during plea negotiations for a deferred sentence to be used against her in the criminal trial after the plea negotiations failed). The fact that the legislative authority for the protective orders is implicit, rather than express, does not detract from its efficacy.[4]

## D.

The People also argue that even if protective orders are authorized by section 19–3–111 incident to approved treatment plans in dependency or neglect cases, a court in authorizing and fashioning such orders must balance the values to be pro-

---

**4.** The People note the legislative recognition of a privilege for certain communications between social workers and clients under § 12–63.5–115, 5 C.R.S. (1985). They contend that this privilege is not applicable to the communications that are the subject of the protective orders at issue here and that, even if it is, the privilege must give way to the duty to report evidence of child abuse under § 19–10–104, 8B C.R.S. (1986). Our holding that § 19–3–111, 8B C.R.S. (1976), provides an independent basis for the protective orders makes it unnecessary to consider the scope of the privilege created by § 12–63.5–115 or the interrelation of that privilege and the duty to report evidence of child abuse under § 19–10–104.

tected by such orders against the important public policy of bringing to justice persons guilty of sexual abuse of children. Such a balancing test, properly applied, would have dictated denial of the protective orders in the cases before us, the People contend.

We agree that in determining the scope of protective orders to be issued in support of a treatment plan under section 19–3–111 a court should confine the relief to that reasonably necessary to promote the therapeutic objectives of the treatment plan. The court in the present cases did just that. No protection is provided for disclosure of plans for future criminal conduct or past criminal conduct not related to the treatment plan. Communications between the therapists and the children and between the therapists and parent respondents who have not engaged in sexually abusive conduct are not protected. The orders insulate from disclosure only those statements concerning conduct related to the treatment plan, conduct that must be remedied if the treatment plan is to be successful. Moreover, there is no reason to believe that such statements would be made at all absent the protections provided by the protective orders. The trial court's orders reflect a sensitive balancing of societal interests in providing effective treatment for sexually abusive parents in an effort to preserve and strengthen family ties wherever possible, § 19–1–102(1)(d), 8B C.R.S. (1986), *In re C.A.K.*, 652 P.2d at 610, and in allowing law enforcement officers to investigate criminal conduct and to prosecute those who violate the criminal laws.[5]

The rule to show cause is discharged.

VOLLACK, J., dissents.

ERICKSON, J., joins in the dissent.

5. Two of the protective orders are directed to the Denver District Attorney and one applies to the Denver Police Department. The People, through the District Attorney for the Seventeenth Judicial District, challenge the authority of the juvenile division of the Adams County

VOLLACK, Justice, dissenting:

The majority opinion recognizes that the types of protective orders specifically described in section 19–3–110(2), 8B C.R.S. (1986), do not expressly encompass the type of order entered here. I agree. The majority, however, next reasons that the requirement in section 19–3–111, that the court order an appropriate treatment plan, implicitly authorizes the court to issue such orders as are reasonably necessary to implement that mandate, including the issuance of protective orders under section 19–3–110(2) prohibiting certain district attorneys and police officers from questioning employees of the Adams County Department of Social Services concerning certain statements made by designated respondents in the course of the court-ordered treatment plans. Because I believe the overriding thrust of section 19–3–110 is to protect the child, while section 19–3–111(1)(e)(II), pertaining to treatment plans, is concerned with rendering a particular parent fit to provide adequate parenting to the child, I believe the majority's statement that section 19–3–111 implicitly authorizes the type of protective order issued here under the guise of section 19–3–110 is in error, and I respectfully dissent.

Section 19–3–110, 8B C.R.S. (1986), states in pertinent part:

**Order of protection.** (1) The court may make an order of protection in assistance of, or as a condition of, any decree authorized by this article. The order of protection may set forth reasonable conditions of behavior to be observed for a specified period by the parent, the guardian, *or any other person who is party to a proceeding brought under section 19–1–104(1)(a), (1)(b), or (1)(c).*

(2) The order of protection may require any such person:

(a) To stay away from a child or his residence;

District Court to issue orders binding these officials. Neither the Denver District Attorney nor police officials for the City and County of Denver have appeared to register an objection to the orders, and we decline to address the issue under those circumstances.

(b) To permit a parent to visit a child at stated periods;

(c) To abstain from offensive conduct against a child, his parent or parents, his guardian, or any other person to whom legal custody of a child has been given;

(d) To give proper attention to the care of the home;

(e) To cooperate in good faith with an agency:

(I) Which has been given legal custody of a child;

(II) Which is providing protective supervision of a child by court order; or

(III) To which the child has been referred by the court;

(f) To refrain from acts of commission or omission that tend to make a home an improper place for a child;

(g) To perform any legal obligation of support; or

(h) To pay for damages recoverable under the provisions of section 13–21–107, C.R.S.

(Emphasis added.) Section 19–1–104, 8B C.R.S. (1986), to which section 19–3–110 refers, states in pertinent part:

(1) Except as otherwise provided by law, the juvenile court shall have exclusive original jurisdiction in proceedings:

(a) Concerning any delinquent *child,* as defined in section 19–1–103(2) and (9) but, concerning a delinquent child as defined in section 19–1–103(9)(c), the court may refuse to accept jurisdiction in the case;

. . . .

(c) Concerning any *child* who is neglected or dependent, as defined in section 19–1–103(20);

(Emphasis added.) The definitional sections referred to in 19–1–104, section 19–1–104 itself, and 19–3–110 all clearly pertain to the direct protection of a child. In contrast, section 19–3–111(1)(e)(II) defines "appropriate treatment plan" as:

[A] treatment plan approved by the court which is reasonably calculated to render the particular *respondent* fit to provide adequate parenting to the child

within a reasonable time and which is relative to the child's needs.

(Emphasis added.) The treatment plan, as a judicially ordered attempt to correct parental misconduct, furthers the legislative purpose of preserving and strengthening family ties without removing a child from the custody of his parents unless his welfare and safety or the protection of the public would otherwise be endangered. The focus of such a treatment plan is on the parent, not the child. I believe section 19–3–110, which concerns orders of protection issued for the direct benefit of the child, is wholly distinct and separate from section 19–3–111(1)(e), which provides for the direct supervision of the parent, which indirectly benefits the child.

In essence, the majority opinion reasons that subsection 110 and subsection 111 are intertwined because under subsection 111 the court approves the treatment plan reasonably calculated to render a particular parent fit to provide adequate parenting to the child; and under subsection 110, if the court issues an order of protection that protects the parent, it actually protects the child because the parent will participate in the treatment plan under subsection 111. The majority cites no support for its statement that 19–3–111 implicitly authorizes the protective order issued under 19–3–110. Section 19–3–111 is silent as to the use of protective orders. Section 19–3–110, while it enumerates the type of protection which the child may receive, does not provide for a protective order to be issued on behalf of the parent. It is up to the legislature, not the court, to determine whether the statutory provisions providing for the court-ordered treatment plan may also allow the court to issue a protective order on behalf of the parent who participates in the treatment plan.

The majority cites *In re C.S.M.,* 194 Colo. 76, 570 P.2d 229 (1977), as support for the issuance of a protective order against a person, prohibiting her from associating with the child. *In re C.S.M.* is easily distinguished from the case at bar. The protective order was issued on behalf of the child, not on behalf of the parent, as is the case

here. While we did state that section 19–3–110 "contemplates no limitation except that the person subject to the order be a party to the action, and we will not strain to construe the statute to require more," *id.* at 78, 570 P.2d at 230, we clearly did not state that the court be allowed to issue a protective order on behalf of someone other than the child.

I would conclude, therefore, that the trial court acted without authority and abused its discretion in issuing protective orders on behalf of the parents.

I am authorized to state that Justice ERICKSON joins in this dissent.