In the Matter of the WELFARE OF George Duane WHITE, DOB: 11–22–72, Thomas White, DOB: 6–5–74, Angelene K. White, DOB: 8–29–75, Allan White, DOB: 11–29–76.

No. C2–84–1224.

Court of Appeals of Minnesota.

Feb. 19, 1985.

Jay D. Mondry, Park Rapids, for appellants.

Mark Thomason, Hubbard County Atty., Park Rapids.

Patrick S. Hammers, Park Rapids, Guardian ad litem.

Craig S. Hunter, Park Rapids, for Children.

Heard, considered and decided by POPO-VICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellants' parental rights to their four children were terminated by court order dated June 8, 1984. Appellants claim there was insufficient evidence to support the termination of their parental rights. We reverse and remand.

## FACTS

On March 16, 1976, the Hubbard County Family Court found George, Thomas, and Angelene White neglected and placed them in the custody of the Hubbard County Social Service Agency. On July 6, 1977, after an annual review of custody, the court issued its order terminating jurisdiction over the children. The children were returned to their parents.

On August 2, 1979, the four White children were found dependent and neglected. Temporary custody was again awarded to the Hubbard County Social Service Agency and the children have been in foster homes since then. The Whites continually exercised their visitation rights during this period.

On February 17, 1984, the Hubbard County Department of Social Services filed a petition requesting termination of William and Gwen White's parental rights. After several days of hearing, the trial court terminated the Whites' parental rights.

## ISSUE

Was there clear and convincing evidence supporting the termination of appellants' parental rights under Minn.Stat. § 260.221 (Supp.1983)?

## ANALYSIS

■ 1. In order to terminate parental rights, the court must find "clear and convincing evidence that one or more of the conditions set out in section 260.221 exist." Minn.Stat. § 260.241, subd. 1 (1982); *see In the Matter of the Welfare of Rosenbloom,* 266 N.W.2d 888, 889 (Minn.1978). The court must find "sufficient evidence that a specific statutory ground for termination exists." *In the Matter of the Welfare of Solomon,* 291 N.W.2d 364, 367 (Minn.1980).

> Implicit in the statutes is the policy that whenever possible the family relationship should be strengthened and preserved. * * * An involuntary termination of the [parental] relationship in cases of dependency and neglect should be ordered only where the other statutory remedies have failed.

*In re Welfare of Barron,* 268 Minn. 48, 53, 127 N.W.2d 702, 706 (1964).

> If in the parents there is such a lack of moral stamina or ability to gain a livelihood that it appears that the child must go without proper education and moral training or suffer want under their care and custody, then the best interests of the child are at stake. *Mere poverty, however, of the parents is seldom, if ever, a sufficient ground for depriving them of the natural right to the custody* of their child or children, to say nothing of the statutory right.

*In re Dependency of Klugman,* 256 Minn. 113, 120, 97 N.W.2d 425, 430 (1959) (emphasis supplied).

■ 2. In this matter, the record indicates several of the grounds considered in terminating the Whites' parental rights are directly attributable to their poverty, lack of employment, and educational abilities. The record also indicates that social service workers established unrealistic foster placement plans which failed to address the Whites' lack of income and employment.

3. We are also concerned because the Whites did not receive counsel or have direct input into the foster placement plans. The Whites did not fully understand their rights, and their lack of input contributed to any problems they may have had in meeting the requirements of the 1982 plan.

4. Finally, the juvenile court based the termination of parental rights on incidents

which occurred in previous neglect and dependency proceedings, but the court had terminated its jurisdiction in those matters by order dated July 6, 1977. The juvenile court should not have considered the facts involved in that prior proceeding when it terminated appellants' parental rights in 1984.

5. We are mindful of the trial court's and the childrens' counsel's sincerity and recommendations but termination of parental rights is a severe act of finality. All efforts should be expended to salvage a family unit before it is separated. If more effort had been expended in assisting the family by AFDC or other financial assistance together with a placement plan of realistic family goals within their income and educational abilities, perhaps the family's restoration would have been possible. Other than income and educational deficiencies, no real evidence of neglect existed. There were no claims or evidence of physical or emotional abuse, or lack of parental interest. Instead, there was overwhelming evidence of the parents' love for their children and exercising all visitation privileges when available to them.

### DECISION

The record does not contain clear and convincing evidence supporting the termination of appellants' parental rights. This matter is reversed and remanded to the juvenile court with instructions to:

(1) Supervise the preparation of a new, realistic foster placement plan. Appellants shall be represented by counsel and have direct input into the preparation of the new plan;

(2) Permit the Whites to have a reasonable period of time of at least one year to comply with the terms of the new plan;

(3) Grant and assist the Whites regular visitation rights on a frequent and regular basis; and

(4) Provide appropriate counseling and assistance compatible with their financial and educational levels.

Reversed and remanded.