*5This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0858**

In the Matter of the Welfare of the Children of:
D. C. a/k/a Q. N. F. (W.), Parent

**Filed November 14, 2016
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-JV-15-6954

Mary F. Moriarty, Chief Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, Minnesota (for appellant D.C.)

Michael O. Freeman, Hennepin County Attorney, Michelle A. Hatcher, Assistant County Attorney, Minneapolis, Minnesota (for respondent HCHS and PHD)

Jeffrey P. Justman, Bruce Jones, Faegre Baker Daniels LLP, Minneapolis, Minnesota (for respondent Guardian ad Litem)

Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and Hooten, Judge.

## U N P U B L I S H E D   O P I N I O N

**HOOTEN**, Judge

On appeal from the termination of her parental rights, appellant mother argues that the county failed to make reasonable efforts to reunify the family and that termination of her parental rights is not in her children's best interests. We affirm.

# FACTS

Appellant D.C. is the biological mother of three children who were minors at the time of the termination trial: D.H., born in July 1998, J.H., born in November 2000, and B.C., born in October 2005. Appellant was neither married when the children were conceived nor when they were born. Appellant and G.H. signed recognition of parentage forms for both D.H. and J.H., which were filed with the Minnesota Department of Health. L.M. is B.C.'s alleged father. Neither G.H. nor L.M. participated in these proceedings.

In November 2014, respondent Hennepin County Human Services and Public Health Department (the county) filed a children in need of protection or services (CHIPS) petition, seeking to adjudicate D.H., J.H., and B.C. as CHIPS. The county became involved with the family after J.H., who was almost 14 years old at the time, was left alone at a homeless shelter without the ability to contact appellant. The police were called, and J.H. was put in an emergency protective hold.

The county created out of home placement plans for each of the children. The plans included a case plan for appellant, which required that appellant, among other things, complete a chemical dependency evaluation and follow its recommendations. At some point after the filing of the CHIPS petition, appellant admitted that she had health issues that interfered with her ability to meet the needs of her children and agreed that she was in need of case management services. On May 21, 2015, the district court filed an order adjudicating appellant's three minor children as CHIPS. The district court's order adopted a case plan, which required appellant to (1) complete a combined parenting and mental health assessment and follow its recommendations; (2) complete a chemical health

2

assessment and follow its recommendations; (3) submit to random urinalysis (UA); (4) obtain or maintain safe, suitable, and sober housing; and (5) cooperate with the child protection social worker, including "signing all requested releases of information, maintaining consistent contact, notifying of current address and any changes, and allowing access to the home and home visits."

The county filed a petition to terminate the parental rights of appellant, G.H., and L.M. on December 8, 2015. A trial was held on the matter on February 26, 2016. The children were ages 17, 15, and 10 at the time of trial. The following evidence was presented at trial.

In the summer of 2014, prior to the filing of the CHIPS petition, appellant completed a chemical dependency assessment. Appellant told the assessing doctor that she had been admitted to the Hennepin County inpatient mental health unit for depression and suicidal ideation. Appellant reported that she began using crack cocaine at the age of 25 and that her use of cocaine had escalated to her smoking $100 worth of crack cocaine three or four days a week at the time of the assessment. Appellant also reported that she drank about five to six beers whenever she used cocaine. Appellant reported a history of physical and sexual assault, including being stabbed 17 times on one occasion. Appellant was diagnosed with posttraumatic stress disorder, depressive disorder, cocaine use disorder, and alcohol use disorder. The assessment recommended that appellant abstain from the use of alcohol and all mood-altering chemicals, undergo psychiatric consultation, establish care with mental health providers, and reside in sober housing or extended chemical dependency

treatment. After completing an initial treatment program, appellant entered an aftercare program, but failed to complete it.

The social worker testified that when she first met with appellant in November 2014, shortly after the CHIPS petition was filed, appellant was asked to provide a UA sample, and appellant reported that the UA would be positive for cocaine. During the 13 months between the filing of the CHIPS petition and the termination trial, appellant provided only three UA samples, though she was supposed to provide samples multiple times per week. The first UA sample that appellant provided in November 2014 was positive for opiates and cocaine. The sample appellant provided in July 2015 was positive for oxycodone, and the one she provided in August 2015 was positive for cocaine.

The social worker testified that, at the time the case opened, appellant reported that she had mental health needs. The social worker testified that she made a referral for a combined parenting and mental health assessment, but appellant failed to complete the assessment.

Appellant completed another chemical dependency assessment in February 2015. Appellant completed the assessment after presenting at the acute psychiatry office of Hennepin County Medical Center with complaints of "being overwhelmed and depressed about medical issues." Appellant reported to the assessor that she used crack cocaine almost every day, but that, after becoming homeless for three or four months previously, her use had declined to approximately three to four times a month. The assessment concluded that appellant has "a severe lack of impulse control and coping skills" and "displays verbal compliance, but lacks consistent behaviors [and] has low motivation for

change." The assessment also stated that appellant has "[n]o awareness of the negative impact of mental health problems or substance abuse" and has "[n]o coping skills to arrest mental health or addiction illnesses, or prevent relapse." The assessment recommended that appellant enter residential treatment, work with the Hennepin County Diversion and Recovery Team (DART) program, and coordinate with medical providers.

Appellant testified that she does not currently have a chemical dependency problem, but admitted that chemical use has been an issue for her in the past. Appellant stated that she completed chemical dependency treatment in August 2015, after the second chemical dependency assessment. The social worker testified that she is unaware of whether appellant completed treatment after the chemical dependency assessment. There is no documentation in the record supporting appellant's testimony that she attended treatment in August 2015. Appellant also failed to provide the county with any documentation of compliance with attending therapeutic services to address her mental health diagnoses.

Appellant testified that at the beginning of the case she and her children were staying in a homeless shelter. Appellant claimed that the county offered her very little help to address the housing issue and that she did not have stable housing at the time of trial. Appellant stated that she only found out about available housing resources through her case worker at the nursing home where she lived temporarily after undergoing surgery. Appellant entered the nursing home in April 2015 and stayed there through approximately August 2015. Appellant testified that her homelessness impeded her ability to see her children during the course of the child protection matter.

The social worker testified that appellant reported having a housing case manager at the inception of the case. The social worker testified that she knew from the inception of the case that housing was an issue, she made appointments with appellant to address the housing issue, and appellant failed to come to the appointments. The social worker noted that she discussed the option of going to a shelter with appellant, but because appellant did not want to go to a shelter, she did not refer appellant to a specific shelter. Appellant also had a DART housing worker assisting her with finding housing and was placed on a wait list for family reunification housing, which required as a condition to obtaining housing that she remain sober, cooperative, and case plan compliant. When appellant's name rose to the top of the list, however, appellant did not meet the criteria for obtaining housing because she had not been compliant with her case plan, so her name was moved to the bottom of the list. The social worker testified that it is possible for clients who lack housing to be compliant with their child protection case plans, but that it would likely have been easier for appellant to be case plan compliant if she had stable housing.

During the case, appellant was permitted to have unsupervised visits with all three of her children. However, appellant maintained intermittent telephone contact with her children and visited them infrequently.

D.H. underwent a diagnostic assessment in March 2015. D.H. reported to the assessor that she and her siblings often went without food because appellant spent her money on alcohol and drugs. D.H. stated that appellant is physically and emotionally abusive and uses alcohol and crack cocaine. D.H. also stated that she does not believe that appellant loves her.

6

At trial, D.H. testified that she was aware that appellant used drugs. D.H. testified that she suspected appellant may have been drinking or using drugs during some of their telephone calls in the course of the child protection matter. Both D.H. and J.H. testified, however, that appellant could meet the needs of the family and that they wanted to return to her care.

The guardian ad litem (GAL) who had been appointed to advocate for the children's best interests also testified at trial. The GAL had been assigned to the case for a brief period of time, approximately a month, because the GAL who had previously been assigned to the case had to take an emergency medical leave. But, the GAL testified that she had talked with the previous GAL, reviewed the case file, and spoken with D.H. and B.C. Because she had not spoken to J.H., the GAL testified that she was unable to give an opinion regarding J.H., but she opined that the termination was in the best interests of D.H. and B.C. The GAL stated that the previous GAL believed that termination of appellant's parental rights was in the best interest of all three children.

The social worker opined that termination was in the best interests of all three children. During her testimony, the social worker stated that the biggest concern in the child protection matter was appellant's chemical dependency and that appellant's homelessness was not much of a factor with regard to her lack of case plan compliance. Appellant, on the other hand, testified that housing was the primary issue in the case, but the district court found that this testimony was not credible.

After considering this evidence, the district court filed an order terminating appellant's parental rights. The district court concluded that the county had proven by clear

7

and convincing evidence that appellant's parental rights should be terminated on three different statutory grounds: failure to comply with parental duties; palpable unfitness; and failure of reasonable efforts by the county to correct the conditions leading to out-of-home placement. *See* Minn. Stat. § 260C.301, subd. 1(b)(2), (4), (5) (2014). The district court also found that termination of appellant's parental rights was in the best interests of the children and that the county made reasonable but unsuccessful efforts to reunite the children with appellant. This appeal followed.

## DECISION

Courts presume that parents are fit to care for their children. *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 87 (Minn. App. 2012). "Ordinarily, it is in the best interest of a child to be in the custody of his or her natural parents." *In re Welfare of A.D.*, 535 N.W.2d 643, 647 (Minn. 1995). As a result, "[p]arental rights may be terminated only for grave and weighty reasons." *J.K.T.*, 814 N.W.2d at 87 (quotation omitted).

There are nine statutory bases for involuntarily terminating parental rights. Minn. Stat. § 260C.301, subd. 1(b) (2014). The petitioning county bears the burden of proving statutory grounds for termination by clear and convincing evidence. *Id.*; Minn. Stat. § 260C.317, subd. 1 (2014). "Language throughout the juvenile protection laws emphasizes that the court 'may,' but is not required to, terminate a parent's rights when one of the nine statutory criteria is met." *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 136–37 (Minn. 2014). However, the existence of a statutory ground for termination is insufficient by itself to allow a district court to terminate parental rights, as the Minnesota Supreme Court has stated that "an involuntary termination of parental rights is proper only

when at least one statutory ground for termination is supported by clear and convincing evidence *and* the termination is in the child's best interest." *Id.* at 137.

A reviewing court gives "considerable deference to the district court's decision to terminate parental rights." *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). We give the district court's decision considerable deference because the district court "is in a superior position to assess the credibility of witnesses." *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn. 1996). While we give deference to a district court's decision to terminate parental rights, we "closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing." *S.E.P.*, 744 N.W.2d at 385.

We will affirm the district court's decision to terminate parental rights if one statutory ground is supported by clear and convincing evidence and termination is in the child's best interests, *In re Children of T.R.*, 750 N.W.2d 656, 661 (Minn. 2008), provided that the county made reasonable efforts to reunite the family, *In re Children of T.A.A.*, 702 N.W.2d 703, 708 (Minn. 2005). We review the record in the light most favorable to the district court's factual findings and will set aside such findings only if a review of the record leaves us with the "definite and firm conviction that a mistake has been made." *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000) (quotation omitted).

## I.

Appellant does not make any arguments regarding the specific statutory grounds for the termination of parental rights, but instead argues generally that the district court erred by concluding that the county made reasonable efforts to reunify the family. The

9

termination statute requires that a district court make "specific findings" in every termination proceeding "that reasonable efforts to finalize the permanency plan to reunify the child and the parent were made" or "that reasonable efforts for reunification [were] not required" as set forth in Minn. Stat. § 260.012 (2014). Minn. Stat. § 260C.301, subd. 8 (2014). The district court's reasonable efforts findings must include "individualized and explicit findings regarding the nature and extent of efforts made by the social services agency to rehabilitate the parent and reunite the family." *Id.*, subd. 8(1).

> When determining whether reasonable efforts have been made, the [district] court shall consider whether services to the child and family were: (1) relevant to the safety and protection of the child;
> (2) adequate to meet the needs of the child and family;
> (3) culturally appropriate;
> (4) available and accessible;
> (5) consistent and timely; and
> (6) realistic under the circumstances.

Minn. Stat. § 260.012(h). Alternatively, the district court "may determine that provision of services or further services for the purpose of rehabilitation is futile and therefore unreasonable under the circumstances." *Id.*

"Reasonable efforts at rehabilitation are services that go beyond mere matters of form so as to include real, genuine assistance." *In re Welfare of Children of S.W.*, 727 N.W.2d 144, 150 (Minn. App. 2007) (quotations omitted), *review denied* (Minn. Mar. 28, 2007). Determining whether the county made reasonable efforts requires consideration of how long the county was involved and the quality of its effort. *In re Welfare of H.K.*, 455 N.W.2d 529, 532 (Minn. App. 1990), *review denied* (Minn. July 6, 1990).

10

The district court found that the county made reasonable efforts to reunify the family because the county offered "services that were timely, available, relevant[,] and culturally appropriate." The district court also found that the services offered by the county "provided a meaningful opportunity to address the issues relevant to the foster care placement." These findings are supported by the record. As the district court noted, the county provided appellant with a case plan that included "housing services to alleviate the family's housing needs, . . . a mental health/parenting assessment, a chemical dependency assessment, urinalysis testing and bus cards to assist with transportation needs." Though the county offered these services, the district court found that appellant failed to provide UA samples, failed to complete chemical dependency treatment, failed to undergo a mental health/parenting assessment, and failed to visit her children on a regular basis. These findings are supported by the record.

Appellant argues that the county failed to provide reasonable services because the county "did nothing to assist her in finding affordable housing, and . . . this failure drove all of her case-plan failures [that] were the subject of the trial testimony." In support of this argument, appellant notes the social worker's testimony that it would have been easier to complete her case plan if she had housing.

The record indicates that the county made reasonable efforts to assist appellant in obtaining housing. Appellant reported to the social worker at the inception of the case that she had a housing case manager. The county is unable to provide housing for clients, but can provide information to clients about shelters. Although appellant was provided information about shelters by her social worker, she refused to consider them as options

11

for housing for the vast majority of the case. The social worker made numerous appointments with appellant to address her housing issues, but appellant failed to come to the appointments. The county placed appellant on the family reunification housing list, but appellant forfeited her opportunity to obtain housing because she was not compliant with her case plan. Individuals who complete inpatient treatment are often referred to an outpatient treatment facility that would provide transitional housing, and the transitional housing facilities often assist individuals with obtaining permanent housing. However, appellant failed to complete a primary or transitional housing treatment program that would have allowed her to access these programs, even though the chemical dependency evaluation that she completed in February 2015 recommended that she enter residential treatment and her case plan required following the recommendations of the assessment.

As the district court noted, while appellant did take an important step in locating housing by obtaining a housing advocate through the DART program while she was in the nursing home, she hindered her ability to obtain housing by not considering the viable options offered by the county and by failing to comply with other case plan components. The record reflects that appellant rejected the shelter referrals offered by the county, failed to communicate with the social worker who was trying to discuss housing options, and forfeited opportunities to obtain housing by failing to comply with her case plan.

In sum, the record shows that the county provided mother with services over the course of the child protection proceeding and that the services were tailored to appellant's chemical dependency, mental health, and housing issues. We conclude that the district

12

court's determination that the county made reasonable efforts to reunify appellant and her children is supported by clear and convincing evidence and does not constitute error.

## II.

Appellant contends that termination of her parental rights is not in the best interests of the children. The district court must give "paramount consideration" to the best interests of the child in a termination proceeding. Minn. Stat. § 260C.301, subd. 7 (2014). "[A] child's best interests may preclude terminating parental rights, even when a statutory basis for termination exists." *In re Welfare of Child of D.L.D.*, 771 N.W.2d 538, 545 (Minn. App. 2009) (quotation omitted). In determining the child's best interests, the district court weighs three primary factors: "the child's interest in maintaining the parent-child relationship, the parents' interest in maintaining the parent-child relationship, and any competing interest of the child." *In re Welfare of M.A.H.*, 839 N.W.2d 730, 744 (Minn. App. 2013). Competing interests of the child "include a stable environment, health considerations, and the child's preferences." *Id.* This court reviews a district court's determination of whether termination of parental rights is in a child's best interests for an abuse of discretion. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 905 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012).

The district court cited the three *M.A.H.* factors and concluded that the termination of appellant's parental rights was in the best interests of all three of her minor children. The district court found that the children's competing needs outweighed any interest that either appellant or the children had in maintaining the parent-child relationship. The district court found that appellant loves her children and has a strong bond with them and

that her children love appellant and have a strong bond with her. The district court also found, however, that appellant failed to address her chemical dependency and mental health issues, refused to engage in the vast majority of the case plan, and exposed the children to "a chaotic lifestyle where [appellant's] chemical dependency issues often came before [the children's] basic needs." The district court found that appellant's "lack of engagement in her case plan shows a lack of desire to address her needs and the needs of her children in the ways essential to properly parent." The district court found that the children need health and safety, but that appellant "will be unable to provide minimally adequate care in the reasonably foreseeable future." The district court found that the children's needs outweighed the preferences of both appellant and her children for reunification.

The district court also noted the GAL and the previous GAL's opinions regarding the best interests of the children. The GAL testified that she believed termination of appellant's parental rights was in the best interests of D.H. and B.C., but did not offer an opinion regarding J.H.'s best interests because she had not had the opportunity to speak with him. The previous GAL informed the GAL that she believed termination was in the best interests of the children.

Appellant argues that the district court should have deferred to the wishes of the children, who wanted to be reunited with appellant. However, Minnesota law provides that "[t]he 'best interests of the child' means all relevant factors to be considered and evaluated." Minn. Stat. § 260C.511(a) (Supp. 2015). The district court considered the preferences of the children, but determined that this factor did not outweigh the children's

14

needs, which appellant was unable to meet. Given the record in this case, the district court did not abuse its discretion by failing to defer to the children's stated preferences.

Appellant argues that the GAL's opinion as to the best interests of the children, which the district court cited in its order, should be disregarded, primarily on grounds of inadequate foundation.[1] Appellant appears to argue that, due to the GAL's relatively brief involvement with the case, the GAL's opinion is unreliable because it is largely based on the case file and the GAL's discussion with the previous GAL. The opinion of a lay witness is admissible if rationally based upon his or her own perceptions and helpful to the determination of a fact in issue. Minn. R. Evid. 701. Though the GAL's involvement with the case was relatively short because of the previous GAL's emergency leave, it is unclear why her reliance in part on the case file would render her opinion unreliable, especially when she also had an opportunity to speak with D.H. and B.C and observe the testimony of appellant, the social worker, D.H., and J.H. Moreover, the district court indicated that it gave "slightly less weight" to the opinion of the GAL given the fact that she was on the case for a limited period of time. We conclude that the district court properly considered the GAL's testimony in making its best interests determination.

Appellant argues that the GAL's opinion is heavily based on appellant's child protection history and that it is improper to base a termination of parental rights on previous child protection referrals or adjudications that have been closed. Appellant's child protection history dates back to August 1999 and includes "several maltreatment findings

---

[1] We note that there was no objection to the foundation of the GAL's opinion at trial.

15

for educational neglect, child endangerment, exposing her children to domestic violence, neglect, failure to provide medical treatment, crack cocaine and alcohol concerns and physical abuse." The GAL testified that she was concerned by the pattern of the child protection cases, particularly the educational neglect that had occurred in some of the previous cases. The evidence in a termination case "must address conditions that exist at the time of the hearing." *In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn. 1980). In support of her argument, appellant cites *In re Welfare of White*, 363 N.W.2d 79 (Minn. App. 1985). In *White*, the district court based the termination of parental rights on incidents that had occurred in previous child protection proceedings that had been closed. 363 N.W.2d at 80–81. Here, however, while the GAL did mention the past child protection proceedings in her testimony, her opinion was based on other factors as well. Moreover, the district court did not consider the past proceedings in its best interests analysis, much less base its termination decision on incidents in the prior proceedings.

Next, appellant notes that D.H. was only a few months away from turning 18 years old at the time of trial and contends that terminating parental rights to a child of that age is "nearly unheard of in our system." Appellant cites no authority for her assertion and merely argues that the termination of parental rights of a soon-to-be adult is not consistent with the purposes of child protection proceedings. For the purposes of the termination of parental rights statute, "'[c]hild' means an individual under 18 years of age" as well as "individuals under age 21 who are in foster care" under specified circumstances. Minn. Stat. § 260C.007, subd. 4 (2014). The district court clearly had the authority to terminate

appellant's parental rights to D.H.[2]  Moreover, the termination was consistent with the purposes of child protection proceedings, namely, ensuring that the child receives care and guidance that will best serve the welfare of the child.  Minn. Stat. § 260C.001, subd. 2(b) (2014).

Finally, appellant argues that the GAL cited certain secondary benefits of termination, such as giving D.H. access to special education and job training funds and that such benefits are not proper grounds for termination.  We do not need to determine whether this was error, however, as the district court did not rely on this testimony either in determining whether the statutory grounds for termination were met or in determining the children's best interests.  Moreover, the funds were only one of the factors the GAL mentioned in opining that termination was in D.H.'s best interests, as the GAL testified that appellant does not have the ability to adequately provide shelter, food, healthcare, and education for her children and that appellant's chemical dependency is a significant issue.

Because the district court's best interests findings are supported by the record and appellant's arguments are unavailing, we conclude that the district court did not abuse its discretion in determining that termination of appellant's parental rights is in the best interests of the children.

**Affirmed.**

---

[2] We note that Minnesota law contemplates children remaining in foster care after the age of 18.  *See* Minn. Stat. § 260C.229 (2014) (providing for voluntary foster care for children over age 18); Minn. Stat. § 260C.451 (2014 & Supp. 2015) (identifying foster care benefits available for children over age 18).

17